CUNDALL, TRUSTEE, APPELLEE, *v.* U.S. BANK, TRUSTEE;

CAUDILL, EXR., ET AL., APPELLANTS; CUNDALL ET AL., APPELLEES.

[Cite as *Cundall v. U.S. Bank,* 122 Ohio St.3d 188, 2009-Ohio-2523.]

*Trusts — Trustees — Action alleging fraud, self-dealing, and other breaches of*
*fiduciary duty by trustees in sale of stock — Four-year limitations period*
*in R.C. 2305.09 applies — Limitations period begins to run when alleged*
*breaches should have been discovered by complainants — Action time-*
*barred.*

(No. 2008-0314 — Submitted January 14, 2009 — Decided June 4, 2009.)

APPEAL from the Court of Appeals for Hamilton County,

Nos. C-070081 and C-070082, 174 Ohio App.3d 421, 2007-Ohio-7067.

_____

**O'CONNOR, J.**

{¶ 1} This appeal presents an array of legal questions that arise from the sale of shares of stock in a closely held corporation 25 years ago. Appellee Michael K. Cundall filed a complaint in 2006 alleging fraud, self-dealing, and other breaches of fiduciary duties by trustees of certain family trusts in transacting the sale. He sought a constructive trust over the proceeds of the sales, a declaration of rights under the trusts, and $300 million in compensatory and punitive damages. We find that all of these claims are barred by the applicable statute of limitations and remand this cause to the trial court to enter judgment in favor of appellants.

**Relevant Background**

*A. The "Share A/Share B Trust"*

{¶ 2} In 1976, John F. Koons Sr. and his wife, Ethel Bolan Koons, created a trust for the benefit of their grandchildren. The trust was funded with

thousands of shares of stock from their company, the Central Investment Corporation ("CIC"), a profitable enterprise that had owned a brewery and soft-drink bottling companies. The Koonses named their sole son, John F. Koons III ("Bud"), as trustee of the trust.

{¶ 3} The trust document directed the trustee to divide the trust's assets into two equal funds: "Share A," for the benefit of Bud's children, and "Share B," for the benefit of the children born to the Koonses' sole daughter, Betty Lou Koons Cundall. The trust document instructed that any amounts contributed to the trust were to be divided equally unless otherwise directed.

{¶ 4} Although the trust document gave Bud broad power to sell any assets of the trust for cash "without being subject to the laws of the state or nation," it directed that he could not distribute the trust's income or principal for his own benefit.

### B. The Betty Lou Cundall Trust

{¶ 5} The following year, Mrs. Cundall created her own trust for the benefit of herself, her husband, and their four children, appellee Michael K. Cundall ("Michael"), Peter B. Cundall, Richard Cundall III, and Sara Cundall Kersting. That trust's assets included more than 10,000 shares of Koons-Cundall-Mitchell Corporation, a closely held corporation that apparently served as a holding company for CIC stock, which was its only asset.

{¶ 6} A predecessor of appellant U.S. Bank, First National Bank of Cincinnati, was named trustee of the Betty Lou Cundall Trust at the trust's inception. U.S. Bank continued to serve as trustee until 1996. U.S. Bank also served as the commercial banker for CIC, which was led by Bud as CIC's president and chief executive officer at that time.

### C. The Offers for and Sale of CIC Stock from the Trusts

2

**{¶ 7}** In 1983, Bud offered to buy the Cundall families' shares of CIC, including the shares held in Share B and the Betty Lou Cundall Trust. The initial offer was $155 per share. That offer was refused.

**{¶ 8}** Around this time, CIC purchased its company stock from another shareholder, Lloyd Miller. The purchase price was $328 per share – more than double the price that was offered to the Cundall beneficiaries.

**{¶ 9}** Michael alleges that after Miller sold his shares of CIC, Bud acted improperly by using undue influence, duress, and overreaching to coerce Michael and other members of the Cundall families to sell their shares of CIC back to CIC. More specifically, Michael charges that as trustee for the 1976 trust, Bud "used his economic and legal power and authority to improperly acquire [CIC] shares for his benefit" and for the benefit of Bud's own children and grandchildren, and that he engaged in self-dealing. According to Michael, the self-dealing was "accomplished through a transparent subterfuge: the stock was acquired by the company, not [Bud], but the net effect was to increase [Bud's] ownership percentage and value." Michael further alleges that U.S. Bank knowingly assisted Bud in these efforts.

**{¶ 10}** When the beneficiaries of the Share B Trust and the Betty Lou Cundall Trust sold back the shares of CIC held in those trusts, they received $210 per share – a figure more than Bud's initial offer but far less than the price paid for Miller's shares. Nevertheless, the Cundall beneficiaries received more than $2,100,000 from the sale.

**{¶ 11}** At the time of the sale of the shares, the Cundall beneficiaries executed releases that provided that they would not hold the trustees (Bud and U.S. Bank) liable for the sale in exchange for the trustees' consent to the sale. Michael contends that "[u]nder various threats and cajoling, [Bud] and U.S. Bank obtained releases and/or consents from the Cundall trust beneficiaries who were forced to sell out," but the record indicates that the release for U.S. Bank was

prepared by an attorney working for Michael's father, Richard Cundall Jr. In any event, the releases state that the beneficiaries agree to release both Bud and U.S. Bank from any and all liability that may arise in connection with the sale of the stock.

### D. The Purported Discovery of Inequity

{¶ 12} Michael claimed that although Share A and Share B of the 1976 trust should have been about equal at the time of Bud's death, the value of the shares was quite disparate. At that time, he claims, Share A was valued at more than $30,000,000, but Share B was valued at only $800,000.

{¶ 13} Michael alleged that he did not discover the "fraud and malfeasance" by Bud and U.S. Bank until after Bud's death in 2005, when he claims he learned that CIC was sold for approximately $400,000,000. Similarly, he averred that he did not learn of the "misrepresentations" of the true value of the stock until after Bud's death.

### E. The Lawsuit

{¶ 14} Michael was appointed successor trustee for the 1976 trust in November 2005. Four months later, he brought a four-count complaint against numerous defendants, including Bud's estate, U.S. Bank, trustees of related trusts ("the trustees"), and more than 20 members of the Koons and Cundall families.

{¶ 15} The gravamen of Michael's claims is that Bud breached his fiduciary duties as trustee by acquiring shares of CIC from beneficiaries through intimidation, coercion, and misrepresentations of the true value of the shares. He further claims that U.S. Bank breached its fiduciary duties to the beneficiaries "by participating in and enabling the sale of CIC stock it held as trustee to CIC for [Bud's] benefit and enhanced ownership" and by knowingly concealing the true value of the CIC shares. Michael sought a constructive trust against the trustees and those beneficiaries he claims were unjustly enriched (the Koonses), and a declaration of the rights of the beneficiaries he claims were defrauded (the

4

Cundalls), including Michael's own children (appellees herein), who cross-claimed against the estate, the trustees, and the Koonses. A flurry of motions to dismiss followed.

{¶ 16} U.S. Bank moved to dismiss under Civ.R. 12(B)(6) based on the statute of limitations and the releases signed by the beneficiaries. The Koonses, also arguing that the action was time-barred and that the trial court lacked personal jurisdiction over them as nonresidents of Ohio, moved for dismissal under Civ.R. 12(B)(2) and (B)(6). The trustees also asserted statute-of-limitations defenses; they argued further that dismissal was warranted because Michael had not tendered back the consideration he and his family received from the 1984 sale of CIC stock before filing suit. Michael moved to amend his complaint for a second time, but the trial court denied the motion as futile and granted the motions to dismiss.

{¶ 17} The trial court found that the "tender rule" set forth at paragraph two of the syllabus in *Haller v. Borror Corp.* (1990), 50 Ohio St.3d 10, 552 N.E.2d 207, required dismissal: "[B]ecause a releasor may not attack the validity of a release for fraud in the inducement unless he first tenders back the consideration he received for making the release, all claims related to the 1984 stock sale are barred as a matter of law."

{¶ 18} The First District affirmed in part and reversed in part, and remanded. It affirmed the dismissal as to U.S. Bank on statute-of-limitations grounds. As to the remaining defendants, the court found that the tender rule in *Haller* was inapplicable. The appellate court described *Haller* as "a personal-injury case involving an arm's length transaction, [in which] there was no fiduciary relationship between the parties." 174 Ohio App.3d 421, 2007-Ohio-7067, 882 N.E.2d 481, ¶ 22. The lack of a fiduciary relationship in *Haller* is a crucial distinction, the court held, because the ordinary rules of fraud do not apply

when such a relationship exists, and no court has ever required a "tender back" when there is self-dealing by a fiduciary.  Id. at ¶ 23-25.

{¶ 19} The First District also found that releases such as those signed by the Cundalls are "highly suspect" because they purport to release a fiduciary from liability arising from a transaction that occurred during the fiduciary relationship. Id. at ¶ 34.  It concluded that "[i]f the releases and stock sales are to be proved valid in this case, the burden is on the fiduciaries to show that they acted with the utmost good faith and exercised the most scrupulous honesty toward the beneficiaries, placed the beneficiaries' interests before their own, did not use the advantage of their trustee positions to gain any benefit at the beneficiaries' expense, and did not place themselves in a position in which their interests might have conflicted with their fiduciary obligations."  Id. at ¶38.

{¶ 20} Further, the First District found that although the trial court correctly concluded that Michael's claim against U.S. Bank was barred by the statute of limitations, the claims against Bud and the successor trustees were not. Id. at ¶ 58, 60-61.

{¶ 21} We exercised discretionary jurisdiction over various propositions set forth in the appeals.[1] *Cundall v. U.S. Bank*, 118 Ohio St.3d 1432, 2008-Ohio-2595, 887 N.E.2d 1201.  For the reasons that follow, we find that the statute of limitations bars all claims against appellants.

## II.  Analysis

---

1. In total, appellees and appellants asserted 24 propositions of law in their merit briefs filed in this court.  The propositions of law raise the following issues: whether the common pleas court had personal jurisdiction over those beneficiaries who reside outside Ohio, whether R.C. 5802.02(B) can be applied retroactively, whether the beneficiaries were required to tender back the consideration given for the releases before they may demand that a constructive trust be imposed, whether a presumption of fraud arises in a case of "double dealing" and whether any such presumption can be overcome, whether a transaction is voidable by a beneficiary if the trustee engages in self-dealing, and whether releases signed by parents of minor beneficiaries are binding absent probate court approval.  In light of our disposition, we need not address those claims, and we express no opinion about their merits, if any.

**{¶ 22}** Statutes of limitations foster important public policies: ensuring fairness to the defendant, encouraging prompt prosecution of causes of action, suppressing stale and fraudulent claims, and avoiding the inconvenience engendered by delay and by the difficulty of proving older cases. See, e.g., *O'Stricker v. Jim Walter Corp.* (1983), 4 Ohio St.3d 84, 88, 4 OBR 335, 447 N.E.2d 727. We apply them consistently to ensure the proper administration of justice.

**{¶ 23}** Statutes of limitations attach to causes of action. *Peterson v. Teodosio* (1973), 34 Ohio St.2d 161, 172, 63 O.O.2d 262, 297 N.E.2d 113. In determining the appropriate statute of limitations for a given case, we look to the "essential character" of the plaintiffs' claims. *Doe v. First United Methodist Church* (1994), 68 Ohio St.3d 531, 536, 629 N.E.2d 402.

**{¶ 24}** Here, the appellees clearly asserted claims grounded in fraud and breach of fiduciary duty against the trustees and successor trustees. Claims for fraud and breach of fiduciary duty based on fraud are governed by the four-year statute of limitations set forth in R.C. 2305.09, unless the claim is not discovered despite reasonable diligence. See *Investors REIT One v. Jacobs* (1989), 46 Ohio St.3d 176, 546 N.E.2d 206, paragraph 2b of the syllabus ("by the express terms of R.C. 2305.09(D), the four-year limitations period does not commence to run on claims presented in fraud or conversion until the complainants have discovered, or should have discovered, the claimed matters"); *State ex rel. Lien v. House* (1944), 144 Ohio St. 238, 29 O.O. 399, 58 N.E.2d 675, paragraph two of the syllabus (action against trustees for breach of trust involving tortious conduct such as bad faith, negligence, and double-dealing is one that accrues, "in the absence of undiscovered fraud," when the trusteeship is terminated, and the action is barred in four years).

**{¶ 25}** With this law in mind, we now turn to the claims presented by Michael against the appellants.

*A. The Trustees*

**{¶ 26}** The appellate court applied R.C. 2305.09 to the claims against the individual trustees and successor trustees in this case. 174 Ohio App.3d 421, 2007-Ohio-7067, 882 N.E.2d 481, ¶ 52. But for those defendants, the appellate court summarily found that "[f]or a trustee, the statute of limitations will not begin running until the fiduciary relationship has ended." Id., citing *Lien*, 144 Ohio St. at 247, 29 O.O. 399, 58 N.E.2d 675. The appellate court concluded that because Bud continued to serve as trustee until 2005, when he died, the four-year statute of limitations began to run at that time, and had thus not expired when suit was commenced in 2006. *Cundall* at ¶ 60. We disagree.

**{¶ 27}** Central to the First District's analysis is its myopic focus on the date of Bud's death, which, of course, is the date he ceased to be trustee. According to Michael, that date controls because it is the last date on which Bud failed to correct his wrongful acts, including his alleged self-dealing and other alleged breaches of fiduciary duties. That reading of the rule from *Lien* is accurate only when the trustee's misconduct is surreptitious or obscured and remains so until the trustee's death or removal. In such cases, the beneficiary is unlikely to know of a trustee's clandestine acts until after the trustee has been removed. Our decisions thus hold that "[u]ntil the trustee repudiates his trust obligation, *to the knowledge of the cestui que trust*, no cause of action exists against which a statute of limitation could operate." (Emphasis added.) *Peterson*, 34 Ohio St.2d at 168, 63 O.O.2d 262, 297 N.E.2d 113. Knowledge of the beneficiary is the critical factor because when the beneficiary knows of the misconduct, he has knowledge that the trustee has repudiated his trust obligation. Upon learning of the repudiation, the time for the beneficiary to act begins to run.

**{¶ 28}** As Professor Bogert explains, "[i]f the trustee violates one or more of his obligations to the beneficiary * * *, there obviously is a cause of action in favor of the beneficiary and *any relevant Statute of Limitations will apply from*

*the date when the beneficiary knew of the breach or repudiation*, or by the exercise of reasonable skill and diligence could have learned of it." (Footnotes omitted and emphasis added.) George Gleason Bogert, The Law of Trusts and Trustees (2d Ed.Rev.1995) 630-634, Section 951.

{¶ 29} We have recognized this principle and Ohio courts of appeals have applied it in cases in which the beneficiaries knew of a trustee's misdeeds. As one court of appeals summarized our jurisprudence, "Legal claims for fraud, conversion, and breach of fiduciary duty, which can be brought prior to the termination of the trust, are barred by the statute of limitations if not timely filed. *Paschall v. Hinderer* (1876), 28 Ohio St. 568, 576. A cause of action for fraud or conversion accrues either when the fraud is discovered, or [when] in the exercise of reasonable diligence, the fraud should have been discovered. *Investors REIT One v. Jacobs* (1989), 46 Ohio St.3d 176, 546 N.E.2d 206, paragraph 2b of the syllabus; *Burr v. Stark Cty. Bd. of Commrs.* (1986), 23 Ohio St.3d 69, 76 [23 OBR 200], 491 N.E.2d 1101. When determining whether the exercise of reasonable diligence should have discovered a case of fraud, the relevant inquiry is whether the facts known ' "would lead a fair and prudent man, using ordinary care and thoughtfulness, to make further inquiry * * * ." ' *Hambleton v. R.G. Barry Corp.* (1984), 12 Ohio St.3d 179, 181 [12 OBR 246], 465 N.E.2d 1298, quoting *Schofield v. Cleveland Trust Co.* (1948), 149 Ohio St. 133, 142 [36 O.O. 477], 78 N.E.2d 167." *Stokes v. Berick*, Lake App. No. 98-L-094, 1999 WL 1313668, *5.

{¶ 30} As the First District has recognized, "this standard does not require the victim of the alleged fraud to possess concrete and detailed knowledge, down to the exact penny of damages, of the alleged fraud; rather, the standard requires only facts sufficient to alert a reasonable person of the *possibility* of fraud." (Emphasis added.) *Palm Beach Co. v. Dun & Bradstreet, Inc.* (1995), 106 Ohio App.3d 167, 171, 665 N.E.2d 718. "*[C]onstructive* knowledge of facts, rather

than *actual* knowledge of their legal significance, is enough to start the statute of limitations running under the discovery rule." (Emphasis sic.) *Flowers v. Walker* (1992), 63 Ohio St.3d 546, 549, 589 N.E.2d 1284.

{¶ 31} As is abundantly clear from Michael's complaint, the beneficiaries recognized that the alleged fraud and wrongdoing took place in 1984. At that time, the beneficiaries were aware of the price paid for Miller's shares of stock. And, of course, they were aware of the price for which they sold their shares. Thus, they knew then, or in the exercise of reasonable diligence should have known, of the possibility that the true value of the stock was being, or had been, misrepresented to them.

{¶ 32} If the beneficiaries were in fact coerced into selling the stock, as they claim, those efforts clearly were known to them at that time as well. If Bud bullied them so aggressively that they felt coerced, they cannot claim ignorance. Indeed, it is difficult to envision "bullying" that is unnoticed by its victims.[2]

{¶ 33} At best, Michael suggests that he and the other aggrieved beneficiaries were afraid to resist Bud. That allegation may explain why he and the beneficiaries signed the releases, but it does not change the statute of limitations, which focuses not on whether coercion was involved, but on whether the beneficiaries recognized that they had, or might have, claims against Bud and U.S. Bank.

{¶ 34} Assuming the truth of Michael's allegations, this is not a case of covert wrongdoing committed against unsuspecting beneficiaries. The closest averment of that kind is Michael's suggestion that Bud used "subterfuge." But his allegation, as set forth in the complaint, was that the "subterfuge" by Bud was "transparent." If it was "transparent" then it was "easily detected or seen through," "obvious," "readily understood," and "guileless." Webster's Third New

---

2. We render no opinion as to whether any of the allegations presented in the complaint are true. We assume they are true solely for purposes of our analysis.

International Dictionary (1986) 2430, and the beneficiaries knew, or should have known, of the subterfuge.

{¶ 35} We thus find that the statute of limitations began to run on the claims against Bud in 1984, when the alleged wrongs were committed, not in 2005, when Bud died. Given that the complaint was not filed until 2006, it was well beyond the four-year statute of limitations and is barred. Accordingly, we reverse the appellate court's judgment as it applies to Bud.

*B. U.S. Bank*

{¶ 36} Applying R.C. 2305.09 and the rule from *Lien*, 144 Ohio St. 238, 29 O.O. 399, 58 N.E.2d 675, to U.S. Bank, the appellate court found that if Michael and the Cundalls "had exercised reasonable diligence, they would have discovered any alleged fraud that U.S. Bank had perpetrated against them. In 1984, they knew that CIC had purchased Miller's shares at a much higher price. They also knew that U.S. Bank was CIC's commercial banker." 174 Ohio App.3d 421, 2007-Ohio-7067, 882 N.E.2d 481, ¶ 54. The appellate court concluded that because U.S. Bank was removed as trustee in 1996, and because the Cundalls knew of the alleged fraud at the time of the removal, the statute began to run at the time of the trustee's removal and that it ended in 2000. Id. at ¶ 55. It thus found those claims time-barred. We agree with the outcome, but for a different reason.

{¶ 37} The complaint suggests that the bank assisted Bud in his deception and misrepresentations of the true value of the stock and that it thereby breached its own fiduciary duties to the beneficiaries. The beneficiaries knew, or in the exercise of reasonable diligence should have known, of the possibility that the bank might have been working with Bud in committing the wrongs complained of. Like the claims against Bud, the statute of limitations against U.S. Bank began to run in 1984. They are thus barred by the statute of limitations. We

therefore affirm the appellate court's judgment as it applies to U.S. Bank, but we do so for the reasons stated here.

*C. The Koons Beneficiaries and the Trustees*

**{¶ 38}** Insofar as the complaint asserts claims against the Koonses and the trustees, those claims fatally omit any allegations that they acted fraudulently or committed any breach. Rather, the complaint asserts only that they were unjustly enriched by the purported fraud. Michael thus argues that a constructive trust should be imposed over the funds that they received and any funds remaining in the corpus of the trusts.

**{¶ 39}** As we reiterated recently, a constructive trust is a " ' "trust by operation of law which arises * * * against one who, by fraud, actual or constructive, by duress or abuse of confidence * * * or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy." ' " *Estate of Cowling v. Estate of Cowling*, 109 Ohio St.3d 276, 2006-Ohio-2418, 847 N.E.2d 405, ¶ 18, quoting *Ferguson v. Owens* (1984), 9 Ohio St.3d 223, 225, 9 OBR 565, 459 N.E.2d 1293, quoting 76 American Jurisprudence 2d (1975) 446, Trusts, Section 221. The constructive trust is an equitable remedy that protects not only against fraud, but also unjust enrichment, " 'where it is against the principles of equity that the property be retained by a certain person even though the property was acquired without fraud.' " *Cowling* at ¶ 19, quoting *Ferguson* at 226, 9 OBR 565, 459 N.E.2d 1293.

**{¶ 40}** In Ohio, the rule of "universal application" is that statutes of limitations apply to actions seeking to impose a constructive trust. *Peterson*, 34 Ohio St.2d at 172, 63 O.O.2d 262, 297 N.E.2d 113. "Constructive trusts, by their very nature, are not technical direct trusts cognizable solely in equity, and, therefore, are not continuing and subsisting trusts exempted [under former R.C.

2305.22] from the statutes of limitation." [3] Id. at 171-172, 63 O.O.2d 262, 297 N.E.2d 113. Thus, "[i]f the cause of action in which imposition of a constructive trust is sought as a remedy is barred by a statute of limitation, the imposition of a constructive trust is likewise barred." Id. at 172, 63 O.O.2d 262, 297 N.E.2d 113.

{¶ 41} The court of appeals correctly recognized that a statute of limitations applies to the constructive trust. But it repeated its error of misapplying the rule in *Lien* to this case by holding that the statute of limitations had not yet run. 174 Ohio App.3d 421, 2007-Ohio-7067, 882 N.E.2d 481, ¶ 52. For the reasons described previously, *Lien* does not apply in this case. We find that the claim for a constructive trust is also time-barred because the cause of action underlying that claim arose in 1984, more than four years before the action was filed. Accordingly, we reverse the judgment of the appellate court as it applies to the Koonses and the trustees. The cause is remanded to the trial court for entry of judgment for appellants.

Judgment affirmed in part
and reversed in part,
and cause remanded.

MOYER, C.J., and LUNDBERG STRATTON, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

PFEIFER, J., dissents.

_____

**PFEIFER, J., dissenting.**

{¶ 42} I dissent and would affirm the decision of the court of appeals. This appeal emanates from a motion to dismiss brought pursuant to Civ.R. 12(B)(6). The majority inappropriately relies on facts and inferences not in the

---

3. See 2006 Sub.H.B. No. 416 (ending exemption of "continuing and subsisting" trusts from operation of statute of limitations).

complaint in arriving at its decision, holding in favor of the appellants upon a basis none of them raised in their appeals to this court.

{¶ 43} A trial court may not rely on allegations or evidence outside the complaint in considering motions for dismissal brought pursuant to Civ.R. 12(B)(6). *State ex rel. Fuqua v. Alexander* (1997)*,* 79 Ohio St.3d 206, 207, 680 N.E.2d 985. The trial court, reviewing the complaint and nothing else, may dismiss the case only if it appears beyond a doubt that the plaintiff can prove no set of facts entitling the plaintiff to recover. *O'Brien v. Univ. Community Tenants Union, Inc.* (1975), 42 Ohio St.2d 242, 71 O.O.2d 223, 327 N.E.2d 753, syllabus. The court must presume that all factual allegations in the complaint are true and draw all reasonable inferences in favor of the nonmoving party. *Mitchell v. Lawson Milk Co.* (1988), 40 Ohio St.3d 190, 192, 532 N.E.2d 753.

{¶ 44} The trial court in this case did not decide this case on the basis of the expiration of the statute of limitations. None of the parties has raised in a proposition of law that the claims against "Uncle Bud" Koons should be decided in their favor because the statute of limitations for claims against Uncle Bud had begun to run in 1984. The majority develops that argument itself.

{¶ 45} I do agree with the majority that the limitations period for claims relating to Uncle Bud began to run when the plaintiffs knew or should have known that Uncle Bud had committed fraud. The majority cites Professor Bogert's statement that "[i]f the trustee violates one or more of his obligations to the beneficiary * * *, there obviously is a cause of action in favor of the beneficiary and *any relevant Statute of Limitations will apply from the date when the beneficiary knew of the breach or repudiation*, or by the exercise of reasonable skill and diligence should have learned of it." True enough.

{¶ 46} But Professor Bogert did not read the complaint here. Keeping in mind that we must draw all inferences in favor of the plaintiffs, the complaint does not establish that the plaintiffs knew in 1984 that Uncle Bud had committed

14

fraud. The majority says that in 1984 "the beneficiaries were aware of the price paid for Miller's shares of stock." If they were aware, they did not so state in the complaint. If it *is* true that the plaintiffs knew the purchase price of Miller's shares, neither the majority nor the complaint tells us how many shares Miller held. Is it not possible that Miller's fewer shares might garner more per share than the 10,077 shares held by the Cundalls' portion of the trust? Is it not possible that Miller's shares had a higher nuisance value than market value?

{¶ 47} Here is what *is* in the complaint: The plaintiffs plainly allege that they were misled as to the value of the stock, that both U.S. Bank and Uncle Bud had concealed its true value. The plaintiffs learned in 2005 that CIC was sold for $400 million, which led them to finally learn what Uncle Bud may have been up to.

{¶ 48} Nothing in the complaint indicates that the plaintiffs should have known that Uncle Bud would seek to loot their portion of the trust. True, the plaintiffs allege coercion by Uncle Bud, but they could well have believed that he was pressuring them to sell their shares for the good of the trust. As CEO of CIC, he would be in a position to know the right time to sell. And U.S. Bank backed Uncle Bud up as to the value of the stock.

{¶ 49} Most preposterously, the majority states that the complaint's use of the word "transparent" to characterize Uncle Bud's subterfuge means that the subterfuge was obvious when it occurred. The majority uses the complaint's "third-person omniscient" point of view against the plaintiffs. But the complaint does not allege that the subterfuge was transparent to the plaintiffs at the time it happened; it alleges that *looking back*, Uncle Bud's subterfuge was transparent.

{¶ 50} Now, I am in no way convinced that the plaintiffs would ultimately be able to prove a valid claim. I am not convinced that the stock price paid in 1984 for CIC, a Pepsi bottler, was unfair. Much has happened in the "Cola Wars" since then, and a lot of carbonated water has gone under the bridge. We have

seen the advent of Diet Pepsi, Pepsi Free, Crystal Pepsi, Pepsi AM, Pepsi Blue, Pepsi Holiday Spice, Pepsi Lime, Pepsi Raging Razzberry, Pepsi Twist, Pepsi One, and Pepsi Jazz. A generation has passed. Moreover, the value of a share of stock in numerous companies could have made amazing leaps from 1984 to 2005.

{¶ 51} Be that as it may, the majority has ignored that this case is in this court due to the trial court's granting of a Civ.R. 12(B)(6) motion to dismiss. It ignores our jurisprudence regarding the deference to be given to nonmoving parties in ruling on motions to dismiss. This case may be appropriate for summary judgment one day, but if one looks at the complaint and draws all reasonable inferences in the favor of the plaintiffs, one cannot conclude that the plaintiffs knew in 1984 that Uncle Bud had committed fraud. Yes, today's result nips in the bud a lawsuit that could become a real-life *Jarndyce and Jarndyce*, but that is no reason to artificially end the case now. We do our jurisprudence no favors by ending a bad lawsuit in a way that is contrary to law. The majority liberally cites Professor Bogert in its opinion. I think "Professor" Bogart is more applicable here: "Things are never so bad they can't be made worse."

_____

The Ward Law Firm, L.L.C., and Richard G. Ward, for appellee Richard K. Cundall, individually and as successor trustee.

Helmer, Martins, Rice & Popham Co., L.P.A., James B. Helmer Jr., Julie W. Popham, Robert M. Rice, and Erin M. Campbell, for appellants Richard W. Caudill, Keven E. Shell, William P. Martin II, G. Jack Donson Jr., Michael Caudill, and D. Scott Elliot, Trustees.

Beckman Weil Shepardson, LLC, Peter L. Cassady, and Brian G. Dershaw, for appellants Deborah Koons Garcia, John F. Koons IV, James B. Koons, Caroline M. Koons, Kathleen M. Koons, Maura L. Koons, Jeremy B. Koons, and Morgan N. Koons.

Ulmer & Berne, L.L.P., Donald J. Mooney Jr., and Pamela A. Ginsburg, for appellants Christina Koons, Nicholas Koons Baker, and Carson Nye Koons Baker.

William H. Blessing, for appellees Michael K. Cundall Jr., Courtney Fletcher Cundall, and Hillary Cundall.

_____