**MAY, Trustee, Appellant,**

v.

**COPELAND et al.; Snider, Appellee.**

[Cite as *May v. Copeland*, 192 Ohio App.3d 1, 2010-Ohio-6493.]

Court of Appeals of Ohio,
Fifth District, Knox County.

No. 09 CA 000035.

Decided Dec. 28, 2010.

Fry, Waller & McCann Co., L.P.A., and Barry A. Waller, for appellant.

McFadden, Winner, Savage & Segerman and Mary Jane McFadden, for appellee.

EDWARDS, Presiding Judge.

{¶ 1} Plaintiff-appellant, Martha Blanche May, trustee of the Henry Paul Snider and Aleita Rae "Sandy" Snider Trust dated December 15, 1978, as amended October 31, 1990, appeals from the September 2, 2009 journal entry of the Knox County Court of Common Pleas, Probate Division. Defendant-appellee Patricia Snider has filed a cross-appeal.

## STATEMENT OF THE FACTS AND CASE

{¶ 2} On December 15, 1978, the Henry Paul Snider and Aleita Ray "Sandy" Snider Trust was created. The trust was created for the benefit of the grantors' then minor children, Cynthia Snider, appellee Patricia Snider, and Linda Snider.

Appellant, who was Henry Paul Snider's daughter from a former marriage, was named trustee.

{¶ 3} The original trust agreement was amended in 1990. Henry Paul Snider died in 1991. The trust, as amended, provided that it would terminate upon the youngest beneficiary reaching the age of 30, at which time, in the absence of an agreement to the contrary, appellant, as trustee, or her successor, would sell the trust assets and distribute the proceeds equally among the beneficiaries. Appellant, as trustee, was to be paid 5 percent of the amount of any sale proceeds when the trust assets were sold. Appellant, as trustee, was also to receive 5 percent of the gross income of the trust for her services.

{¶ 4} In the 1990s, Cynthia Snider sued appellant for breach of trust. The lawsuit was settled by the creation of a separate trust for Cynthia that is not at issue in this case.

{¶ 5} The trust was amended in January 1997 to state as follows:

{¶ 6} "Upon the termination of the Trust in accordance with the provisions thereof, the Trustee shall distribute the assets of the Trust to the beneficiaries as provided by the terms of the Trust. With the consent of the beneficiaries, in lieu of selling all of the assets of the Trust for purposes of distributing the same upon the youngest of the beneficiaries reaching thirty (30) years of age, the Trustee may distribute the assets of the Trust in-kind. In such event, absent an agreement between the Trustee and the beneficiaries as to the value of the assets of the Trust, the assets shall be appraised and a commission in an amount equal to five (5%) of the net value of the assets of the Trust shall be paid to the Trustee in lieu of the commission which would have been received by the Trustee upon the sell of said assets."

{¶ 7} Thus, after January 17, 1997, the trust had only two beneficiaries, appellee and Linda Snider Copeland, appellee's younger sister.

{¶ 8} After Linda turned 30 on February 5, 2002, the provisions of the trust relating to its termination were triggered. Prior to that time, appellant, as trustee, had commissioned appraisals of the real property owned by the trust and also had written trust checks to herself in the total amount of $95,500. That figure represented 5 percent of the value of the appraisals. Appellant, in order to pay herself the $95,500 in commissions, had the trust borrow $130,000.

{¶ 9} After the trust beneficiaries were unable to reach an agreement about the division of the trust assets, appellant, as trustee, on August 12, 2002, filed a complaint for declaratory judgment and other relief in the Knox County Court of Common Pleas, Probate Division. Appellant, in her complaint, indicated that a dispute had arisen about how much each of the trust beneficiaries was entitled to receive from the remaining trust assets and also that a dispute had arisen as to

the remaining balance due to appellant as compensation for her services to the trust. Appellant asked the court to "determine the documents governing the Trust and the construction thereof; and the relative rights and responsibilities of the parties thereunder * * *."

{¶ 10} On September 3, 2002, Linda filed an answer agreeing to all of the allegations in the complaint, with the exception of one allegation of which she had no knowledge. On September 13, 2002, appellee filed an answer and a counter-claim. Appellee, in her counterclaim, alleged that appellant had failed in her fiduciary obligation to provide a proper accounting to the beneficiaries. Appellee demanded an accounting. Appellee also alleged that appellant had exceeded her authority as trustee and had used trust assets for her own personal use.

{¶ 11} Pursuant to an entry filed on December 14, 2005, the trial court appointed Richard T. Taps as commissioner to replace appellant. The trial court ordered appellant to turn over all financial records relating to the trust to Taps. The trial court, in its entry, also ordered Taps to sell all assets and to file an accounting no later than September 30, 2006.

{¶ 12} Pursuant to a journal entry filed on March 9, 2007, First Knox National Bank was substituted as a party, replacing Linda Snider Copeland, beneficiary.

{¶ 13} On November 9, 2007, Taps filed an application for fees and expenses, seeking $72,594 in fees and $1,778.91 as costs. As memorialized in a journal entry filed on December 18, 2007, the trial court ordered that amount to be paid from the trust assets.

{¶ 14} Thereafter, as memorialized in an agreed entry filed on December 19, 2007, First Knox National Bank waived any claim to half the amount owing by appellant to the trust and consented to payment in full by the trust. For that reason, appellee was then the sole defendant in the proceeding.

{¶ 15} Because, under the direction of the commissioner, the trust's assets were liquidated and distributed, the matter then proceeded to an evidentiary hearing before the trial court on appellant's request for fees and on appellee's counterclaim. The trial court, via a journal entry filed on September 2, 2009, held that appellant should be paid $24,236.53 by the trust for her annual compensation for the years 2002 through 2005. This figure represented 5 percent of the gross income of the trust. The trial court indicated that while appellant's performance as trustee was less than perfect, it did not believe that she should be denied that amount. The trial court also held that there was no authority in the trust documents justifying appellant's payment of $95,500 in commissions to herself based upon the appraisals that she had commissioned. The trial court noted that appellant did not distribute any trust assets in kind and did not liquidate any assets. It held, "There is simply no authority to compensate

a fiduciary for work they did not do." The trial court also noted that a substantial fee had been paid to the commissioner who liquidated the trust assets. The trial court also held that because of the waiver filed by Linda, appellant was entitled to keep one half of the "unauthorized fee she paid herself."

{¶ 16} The trial court, in its journal entry, stated as follows: "The total expense to the Trust to borrow this $130,000.00 was $52,922.42 (Exhibit 139). The unauthorized termination commission of $95,500.00 was 74% of the total loan. 74% of the total loan expense is $39,162.59. The Beneficiary is entitled to one half of this amount of $19,581.00."

{¶ 17} In its journal entry, the trial court found that appellant had failed to account for some of her expenditures, had paid herself an unauthorized termination-commission fee, and had breached some of her fiduciary duties. It awarded appellee $77,558 in damages.

{¶ 18} Finally, the trial court also denied appellee's request for punitive damages and attorney fees.

{¶ 19} Appellant now appeals from the trial court's September 2, 2009 journal entry, raising the following assignments of error:

{¶ 20} "I. The trial court erred in finding that the trustee must reimburse appellee $47,750.00 related to the unauthorized termination commission.

{¶ 21} "II. The trial court erred in ordering the appellant to reimburse to appelle (sic) the sum of $19,581.00 related to the loan expense for the unauthorized termination commission.

{¶ 22} "III. The trial court erred in admitting Trial Exhibit 139, the document that contained the alleged cost of the loan to the trust."

{¶ 23} Appellee has filed a cross-appeal, raising the following assignments of error:

{¶ 24} "I. The trial court erred in allowing appellant to profit from her breaches of trust: Ohio law requires an award of damages equal to the greater of the amount needed to restore the trust property or the profit the trustee made by reason of her breaches of trust.

{¶ 25} "II. The trial court erred in failing to award $15,114 in damages proven by appellee/beneficiary on statute of limitation grounds."

## Appellant's First Assignment of Error

{¶ 26} Appellant, in her first assignment of error, argues that the trial court erred in holding that appellant must reimburse appellee $47,750 "related to the unauthorized termination commission." We disagree.

{¶ 27} As is stated above, the trust was amended in January 1997 to state as follows:

{¶ 28} "Upon the termination of the Trust in accordance with the provisions thereof, the Trustee shall distribute the assets of the Trust to the beneficiaries as provided by the terms of the Trust. With the consent of the beneficiaries, in lieu of selling all of the assets of the Trust for purposes of distributing the same upon the youngest of the beneficiaries reaching thirty (30) years of age, the Trustee may distribute the assets of the Trust in-kind. In such event, absent an agreement between the Trustee and the beneficiaries as to the value of the assets of the Trust, the assets shall be appraised and a commission in an amount equal to five (5%) of the net value of the assets of the Trust shall be paid to the Trustee in lieu of the commission which would have been received by the Trustee upon the sell of said assets."

{¶ 29} The trust terminated in February 2002, when Linda attained the age of 30.

{¶ 30} In the case sub judice, in December 2001 and January 2002, before the trust terminated, appellant had the trust's real property and businesses appraised and paid herself a commission in the amount of $95,500, which represented 5 percent of the value of the appraisals. The checks that appellant made out to herself were dated December 2001 and January 2002. However, as of that time, there was no agreement to distribute the trust assets in kind. Appellee, in a letter to appellant dated January 3, 2002, stated explicitly that she was not consenting to early termination of her trust funds and that before she would consent to termination of the funds, she needed estimates of final distributions for "any compensation, taxes, attorney fees and all other expenses."

{¶ 31} In addition, appellant testified during her deposition that as of December 31, 2001, appellee had not consented to the distribution of in-kind property. When asked whether there was any basis based on the language of the trust document for her to take 5 percent of the appraised value of the trust property, appellant testified that she thought at the time that there was. Moreover, appellant's counsel, in a letter to appellee dated December 26, 2001, stated as follows:

{¶ 32} "I hope the enclosed records and any additional records which you obtain from Mr. Hansen's office will allow you to finally meet with Ms. May and myself prior to January 7, 2002, concerning termination of the Trust. According to records provided to me, in order to equalize distributions to date between yourself and Linda, you are entitled to receive in excess of forty-one thousand and 00/100 ($41,000.00). It is Ms. May's desire to have your input as to how that difference should be made up, as well as how the remaining Trust assets should be divided between yourself and Linda, after payment of any money due to the

Trustee. Absent a meeting, Ms. May will decide those matters in accordance with her authority as Trustee."

{¶ 33} Appellant maintains that though no fault of her own, the assets were never sold or distributed because the remaining beneficiaries could not agree and that she was frustrated in her efforts to complete termination of the trust. However, the fact remains that the trust specifically provides for a 5 percent commission to the trustee if the trustee either sells the assets or distributes them in kind. Appellant, as trustee, never sold any of the trust assets after the trust terminated and never distributed any assets in kind after that time. Pursuant to an entry filed on December 14, 2005, the trial court appointed Richard T. Taps as commissioner to replace appellant and ordered Taps to sell all assets. After Taps did so, he was paid $72,594 in fees for his services.

{¶ 34} Based on the foregoing, we concur with the trial court that there was no authority "in the governing trust documents or from any other source to justify the payment by the Trustee of these fees to herself * * * There is simply no authority to compensate a fiduciary for work they did not do."

{¶ 35} Appellant's first assignment of error is, therefore, overruled.

### Appellant's Second and Third Assignments of Error

{¶ 36} In her second assignment of error, appellant argues that the trial court erred in ordering her to reimburse appellee the sum of $19,581 relating to the loan expense for the authorized termination commission. In her third assignment of error, appellant argues that the trial court erred in admitting Exhibit 139, which was the document that contained the alleged cost of the $130,000 loan to the trust.

{¶ 37} In the case sub judice, appellant caused the trust to borrow $130,000 to pay her unauthorized termination commission of $95,500. In its journal entry, the trial court found that as evidenced by Exhibit 139, the total expense to the trust to borrow this $130,000 was $52,922.42. Exhibit 139 is a handwritten document captioned "Loan Interest & Fees borrowing $130,000.00." The trial court further found that the $95,500 was 74 percent of the total $130,000 loan and that 74 percent of $52,922.42 was $39,162.59. The trial court ordered appellant to pay half of that amount, or $19,581, to appellee.

{¶ 38} At the conclusion of the trial, appellee's attorney moved for the admission of Exhibits 1 through 180. Appellant's counsel then indicated to the trial court that he needed time to indicate whether or not he had objections to any of the exhibits. In a journal entry filed on May 19, 2009, the trial court stated as follows: "Finally, the parties will review the exhibits and attempt to reach an agreement as to what exhibits can be admitted without objection and what, if any exhibits require a ruling from the Court as to admissibility. On or

before 4:00 p.m. on June 16, 2009, the parties will advise the Court if they have an agreement as to the above matters or if further evidentiary hearing will be necessary. If a further evidentiary hearing is not necessary, the parties will submit proposed findings of fact and conclusions of law by 4:00 p.m. on June 30, 2009."

{¶ 39} Thereafter, on June 22, 2009, appellant trustee filed a report regarding the receipts, further testimony, exhibits and damages pursuant to the journal entry filed on May 19, 2009. In that report, appellant indicated that she was objecting to Exhibit 139 on the grounds of relevance. Appellant did not request a hearing with respect to Exhibit 139 and submitted proposed findings of fact and conclusions of law on July 6, 2009. The trial court, in a journal entry filed on September 2, 2009, found that Exhibit 139 was admitted and made part of the record without objection.

{¶ 40} Appellant now argues that there was insufficient information contained in Exhibit 139 for the trial court to make an accurate calculation of the cost to the trust to borrow the $130,000 and that "the promissory note upon which this calculation was made was not submitted by [a]ppellee nor is there evidence of the amount of the payments made by the trust."

{¶ 41} However, appellant did not object to Exhibit 139 on that basis, but rather on the basis of relevance. A party may not assert a new legal theory for the first time before the appellate court. *Stores Realty Co. v. Cleveland* (1975), 41 Ohio St.2d 41, 43, 70 O.O.2d 123, 322 N.E.2d 629. When a party makes a specific objection to the introduction of evidence, the party is considered to have waived all other grounds for excluding the evidence. *Johnson v. English* (1966), 5 Ohio App.2d 109, 34 O.O.2d 229, 214 N.E.2d 254. Moreover, although the trial court, in its May 19, 2009 journal entry, asked the parties to indicate whether further hearing was necessary, appellant never requested a hearing.

{¶ 42} We find, therefore, that appellant has waived the issues that she asserts in her second and third assignments of error because she did not bring those issues to the attention of the trial court.

{¶ 43} Appellant's second and third assignments of error are, therefore, overruled.

### First Assignment of Error on Cross–Appeal

{¶ 44} In her first assignment of error on cross-appeal, appellee argues that the trial court erred by failing to comply with R.C. 5801.02 and allowing appellant to profit from her breaches of the trust.

{¶ 45} As is stated above, the trial court, in its journal entry, held that because of the waiver filed by First Knox Bank,[1] appellant was entitled to keep one half of the "unauthorized [commission] fee she paid herself." In its journal entry, the trial court also stated as follows:

{¶ 46} "Even though no agreement to distribute the Trust assets in kind had been reached, in December of 2001 and January of 2002, prior to the Trust termination on February 5, 2002, the Trustee commissioned appraisals of the Trust's businesses and real estate at a cost of $6,000 (Ex. 165) and proceeded to pay herself $95,500 in commissions based on those appraisals. This Court finds there was no authority in the governing trust documents or from any other source to justify the payment by the Trustee of these fees to herself. As stated above the Trustee did not distribute the trust assets in kind. She also did not liquidate the trust assets even though she had the power to do so. There is simply no authority to compensate a fiduciary for work they did not do."

{¶ 47} In its journal entry, the trial court also found that appellant had paid an excavating company $500 for work performed at her personal business, using a check written on the trust's checking account. The trial court ordered appellant to reimburse appellee half of that amount, or $250. The trial court also ordered appellant to reimburse appellee $1,866 for half of some telephone bills that had been for nontrust-related business. Appellant had used trust funds to pay those bills. The trial court further found that appellant had written trust checks totaling $579 to a woman who was employed by appellant's personal business and ordered appellant to reimburse appellee half of that amount, or $289. The trial court also ordered appellant to reimburse appellee for half of a $500 check that appellant had written to cash on a trust account and failed to account for. Finally, the trial court ordered appellant to reimburse appellee half of the unsubstantiated trustee expenditures for 1998 through 2002, or $3,326, and to reimburse appellee one half of the $39,162.59 that the trial court found that it cost the trust to take out the $130,000 loan, or $19,581.

{¶ 48} Appellee now argues that in allowing appellant to keep half of the trust monies that she had wrongfully paid herself, the court ignored R.C. 5810.02, which became effective January 1, 2007.

{¶ 49} R.C. 5810.02 states as follows: "(A) A trustee who commits a breach of trust is liable to the beneficiaries affected for the greater of the following:

{¶ 50} "(1) The amount required to restore the value of the trust property and trust distributions to what they would have been had the breach not occurred;

---

1. As is stated above, Linda Snider Copeland's interest in the trust was assigned to First Knox National Bank.

{¶ 51} "(2) The profit the trustee made by reason of the breach."

{¶ 52} That section became effective on January 1, 2007, which is after the case sub judice was filed and while it was pending. However, R.C. 5811.03(A)(3) states as follows: "(A) Except as otherwise provided in Chapters 5801. to 5811. of the Revised Code, all of the following apply: * * * (3) Chapters 5801. to 5811. of the Revised Code apply to judicial proceedings concerning trusts commenced before the effective date of those chapters unless the court finds that application of a particular provision of those chapters would substantially interfere with the effective conduct of the judicial proceedings or prejudice the rights of the parties, in which case the particular provision does not apply, and the superseded law applies."

{¶ 53} In her brief, appellant cites R.C. 5810.09 in arguing that the trial court did not err in ordering her to repay only half of the damages to the trust. That section states as follows: "A trustee is not liable to a beneficiary for breach of trust if the beneficiary consented to the conduct constituting the breach, released the trustee from liability for the breach, or ratified the transaction constituting the breach, unless the consent, release, or ratification of the beneficiary was induced by improper conduct of the trustee or, at the time of the consent, release, or ratification, the beneficiary did not know of the beneficiary's rights or of the material facts relating to the breach." Appellant notes that the trial court cited the fact that through First Knox Bank, Linda Snider Copeland, the other beneficiary of the trust, had waived any rights of recovery that she might have against the trustee. Appellant argues that for that reason, appellee, as the only remaining beneficiary, was entitled to only half of any damages to the trust.

{¶ 54} We note that R.C. 5810.09 is analogous to Section 1009 of the Uniform Trust Code, which, in turn, is based on Sections 216 through 218 of the Restatement (Second) of Trusts (1959). Section 216 of the Restatement of Trusts states as follows: "(1) Except as stated in Subsections (2) and (3), a beneficiary cannot hold the trustee liable for an act or omission of the trustee as a breach of trust if the beneficiary prior to or at the time of the act or omission consented to it." That section does not address releases of a trustee from liability for breach.

{¶ 55} The Comment to Section 216 provides as follows: "g. *Several beneficiaries.* If there are several beneficiaries, whether concurrent or successive, the consent of one of them to a deviation from the terms of the trust does not preclude the other beneficiaries from holding the trustee liable for breach of trust so far as their interests are affected.

{¶ 56} "Thus, the consent of one of two co-beneficiaries to a breach of trust does not preclude the other beneficiary from holding the trustee liable for the breach of trust.

{¶ 57} "**Illustrations:**

{¶ 58} "8. A holds $100,000 in trust to invest the money in bonds and to pay the income to B and C in equal shares and at the expiration of five years to divide the principal equally between B and C. With the consent of B but not of C, A invests the money in shares of stock. At the expiration of five years A sells the shares of $80,000. Although B cannot hold A liable for his share of the loss, C can hold A liable for his share of the loss.

{¶ 59} "9. A holds Blackacre in trust to sell it for not less than $50,000 and to divide the proceeds between B and C. With B's consent but without the consent of C, A sells Blackacre for $40,000 although it could have been sold for $50,000. A pays $20,000 to B and $20,000 to C. C can hold A liable for $5000 but B cannot hold A liable."

{¶ 60} While there is no similar discussion contained after Section 217 of the Restatement of Trusts, which concerns a beneficiary's release of a trustee for breach of trust as opposed to a beneficiary's consent to an act or omission of the trustee prior to or at the time of the act or omission, we find the reasoning contained above to be persuasive. We concur with the trial court that "because of the waiver filed by the other beneficiary, Linda Snider Copeland, the Trustee will be able to keep one half of the unauthorized fee she paid herself." Had Linda's claims against appellant not been waived, the most that appellee, as the other remaining beneficiary, could have received from the trust was one half of the damages.

{¶ 61} We find therefore that the trial court did not err in ordering appellant to pay only half of the damages to appellee.

{¶ 62} Appellee's first assignment of error on cross-appeal is, therefore, overruled.

### Appellee's Second Assignment of Error on Cross–Appeal

{¶ 63} In her second assignment of error on cross-appeal, appellee argues that the trial court erred in failing to award appellee $15,114 in damages on statute-of-limitations grounds. We disagree.

{¶ 64} In the case sub judice, appellee sought to be reimbursed for appellant's unsubstantiated expenditures during 1997. In its September 2, 2009 journal entry, the trial court held that that request was barred by the four-year statute of limitations set forth in R.C. 5810.05. The trial court indicated that appellee

had received records for 1997 on March 18, 1998,[2] that appellee had testified that the records were incomplete, and that appellee, for that reason, should have been on notice of "the potential breach of the Trustee's fiduciary duties." Appellee's counterclaim alleging breach of fiduciary duties was not filed until September 2002, which is more than four years after March 18, 1998.

{¶ 65} R.C. 5810.05(C)(4), which took effect on January 1, 2007, states as follows: "(C) If division (A) of this section does not apply, notwithstanding section 2305.09 of the Revised Code, a judicial proceeding by a beneficiary against a trustee for breach of trust must be commenced within four years after the first of the following to occur * * * (4) The time at which the beneficiary knew or should have known of the breach of trust."

{¶ 66} In turn, R.C. 5811.03 states as follows:

{¶ 67} "(A) Except as otherwise provided in Chapters 5801. to 5811. of the Revised Code, all of the following apply: * * *

{¶ 68} "(3) Chapters 5801. to 5811. of the Revised Code apply to judicial proceedings concerning trusts commenced before the effective date of those chapters unless the court finds that application of a particular provision of those chapters would substantially interfere with the effective conduct of the judicial proceedings or prejudice the rights of the parties, in which case the particular provision does not apply, and the superseded law applies * * *

{¶ 69} "(B) If a right is acquired, extinguished, or barred upon the expiration of a prescribed period that has commenced to run under any other statute before the effective date of Chapters 5801. to 5811. of the Revised Code, that statute continues to apply to the right even if it has been repealed or superseded."

{¶ 70} In the case sub judice, appellee argues that she had a right to rely on the statutes in effect at the time she filed her counterclaims and that applying the statute of limitations contained in R.C. 5801.05(C)(4) affected her substantial rights.

{¶ 71} Assuming arguendo that appellee is correct that the trial court erred in applying R.C. 5810.05(C)(4) and, instead, should have applied R.C. 2305.09 and 2305.22, we find that appellee's claim for damages relating to unsupported expenses that appellant paid herself in 1997 was still time-barred.

{¶ 72} As noted by appellee, at the time she filed her counterclaims on September 13, 2002, R.C. 2305.09 stated as follows:

---

2. While the trial court, in its journal entry, indicated that appellee received the records for 1997 on March 18, 2002, this clearly was a typographical error. The parties agree that the correct date was March 18, 1998.

{¶ 73} "An action for any of the following causes shall be brought within four years after the cause thereof accrued:

{¶ 74} "(A) For trespassing upon real property;

{¶ 75} "(B) For the recovery of personal property, or for taking or detaining it;

{¶ 76} "(C) For relief on the ground of fraud;

{¶ 77} "(D) For an injury to the rights of the plaintiff not arising on contract nor enumerated in sections 2305.10 to 2305.12, 2305.14 and 1304.35 of the Revised Code.

{¶ 78} "If the action is for trespassing under ground (sic) or injury to mines, or for the wrongful taking of personal property, the causes thereof shall not accrue until the wrongdoer is discovered; nor, if it is for fraud, until the fraud is discovered."

{¶ 79} However, R.C. 2305.22 stated that "continuing and subsisting" express trusts were exempt from the application of the four-year statute of limitations contained in R.C. 2305.09. The statute read as follows: "Sections 2305.03 to 2305.21 * * * of the Revised Code, respecting lapse of time as a bar to suit, do not apply in the case of a continuing and subsisting trust * * *." R.C. 2305.22. As noted by the Ohio Supreme Court in *Cundall v. U.S. Bank,* 122 Ohio St.3d 188, 2009-Ohio-2523, 909 N.E.2d 1244, 2006 Sub.H.B. No. 416 [3] ended the "exemption of 'continuing and subsisting' trusts from [the] operation of [the] statute of limitations" contained in R.C. 2305.22. Id. at ¶ 40, fn. 3. Appellee maintains that R.C. 2305.22 applies and that her counterclaims were subject to the R.C. 2305.22 exception at the time they were filed.

{¶ 80} The Ohio Supreme Court discussed R.C. 2305.22 in *Peterson v. Teodosio* (1973), 34 Ohio St.2d 161, 168, 63 O.O.2d 262, 297 N.E.2d 113. In that case, the court stated as follows: "The rule developed by equity courts was that in suits between a cestui que trust [4] and a trustee for the enforcement of a trust that was a continuing technical trust not recognized at law but within the proper, peculiar and exclusive jurisdiction of equity, where the trust was being respected by the trustee, no statute of limitation could be interposed by the trustee as a defense. *Kane v. Bloodgood* (N.Y.1823), 7 Johns Ch. 90; *Paschall v. Hinderer* (1876), 28 Ohio St. 568; *Douglas v. Corry,* supra [(1889)], 40 [46] Ohio St. 349, 21 N.E. 440.

{¶ 81} "The reason why such a rule was developed by equity courts and its incorporation into the Code of Civil Procedure wherein statutes of limitation were

---

3.   2006 Sub. H.B. No. 416, effective January 1, 2007, is the new Trust Act.

4.   "Cestui que trust" is the beneficiary of a trust. See *In re Arnott,* 190 Ohio App.3d 493, 2010-Ohio-5392, 942 N.E.2d 1124.

made applicable to all actions, whether formerly legal or equitable (*Chinn v. Trustees* (1877), 32 Ohio St. 236), is perceivable when consideration is given to the nature of the technical trust cognizable solely in equity.

{¶ 82} " 'A trust is the right, enforceable in equity, to the beneficial enjoyment of property, the legal title to which is in another.' *Ulmer v. Fulton* (1935), 129 Ohio St. 323, 339 [2 O.O. 326, 195 N.E. 557, 564]. The holding and possession of the legal title by the trustee is the holding and possession of the cestui que trust. *Until the trustee repudiates his trust obligation, to the knowledge of the cestui que trust, no cause of action exists against which a statute of limitation could operate.* 9 Bogert, Trust and Trustees (2 Ed.), Section 951. Without such an exception, antiquity of the existence of the trust would constitute a bar to the enforcement of a direct trust between the cestui que trust and the trustee. Hence the observation: 'If time ran against a continuing and subsisting trust such fact would contain the virus of the trust's destruction from the time of its creation without any hostile act by either the trustee or the beneficiary.' *Homer v. Wullenweber* (1951), 89 Ohio App. 255 [45 O.O. 481, 101 N.E.2d 229]." (Emphasis added.) *Peterson*, 34 Ohio St.2d at 168, 63 O.O.2d 262, 297 N.E.2d 113.

{¶ 83} As further noted by the court in *Stokes v. Berick* (Dec. 23, 1999), Lake App. No. 98–L–094, 1999 WL 1313668, at *4, citing *Peterson* at 169: "the rule developed that a cause of action only arose when the trustee disclaimed or repudiated his trust obligation such that the beneficiary had reason to know that the trustee's holding was adverse to the interests of the beneficiary."

{¶ 84} In the case sub judice, appellant openly repudiated her trust obligation, to appellee's knowledge. The trust, as amended in 1997, required appellant to provide the beneficiaries with copies of the bank statements and checks for the trust's general checking account on a quarterly basis throughout the year. While appellee received the records for 1997 in March 1998, at that time, she knew that the records were incomplete and that "stuff" was missing. As noted by appellant, when appellee received those documents and was aware that there were documents missing, "she knew or should have known that she needed to take action then." There was a breach of the appellant's duties at that time, and appellee's cause of action accrued at that time. However, appellee did not file her counterclaims until more than four years after March 1998.

{¶ 85} Based on the foregoing, we find that the trial court did not err in holding that appellee's request to be reimbursed for appellant's unsubstantiated expenditures during 1997 was time-barred, because it is time-barred regardless of which statutes are applicable.

{¶ 86} Appellee's second assignment of error on cross-appeal is overruled.

{¶ 87} Accordingly, the judgment of the Knox County Court of Common Pleas, Probate Division, is affirmed.

Judgment affirmed.

HOFFMAN and DELANEY, JJ., concur.