[Cite as *Bonner v. Delp*, 2021-Ohio-3772.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

Roberta Bonner, Trustee of the Delp
Independence Trust dated July 4, 1999

       Appellant

v.

Cleves R. Delp, Indv. and as Trust Advisor
to the Delp Independence Trust Dated
July 4, 1999, et al.

       Appellees

Court of Appeals No.  L-20-1147

Trial Court No.   2015 ADV 000305

**<u>DECISION AND JUDGMENT</u>**

Decided:  October 22, 2021

* * * * *

Kevin A. Heban, R. Kent Murphree, and John P. Lewandowski, for appellant.

Thomas P. Dillon and Nicholas T. Stack, for appellee, Cleves R. Delp, etc.

Jean Ann Sieler and Robert C. Tucker, for appellee, Dominic J. Spinazze.

* * * * *

**MAYLE, J.**

{¶ 1} Plaintiff-appellant, Roberta Bonner, appeals (1) the April 25, 2016 judgment

of the Lucas County Court of Common Pleas, Probate Division, granting summary

judgment in favor of defendant-appellee, Dominic Spinazze, and (2) its August 5, 2020 judgment after a bench trial, dismissing Bonner's claims against defendant-appellee, Cleves R. Delp. For the following reasons, we affirm the trial court judgment.

## I. Background

{¶ 2} Roberta Bonner, Bradley Delp, and Cleves Delp are siblings. Their stepmother, Evelyn Delp, established The Delp Independence Trust Dated July 4, 1999 ("the Independence Trust") for the benefit of Brad and Cleves and their descendants. Cleves's brother-in-law, attorney Dominic Spinazze, drafted the Independence Trust and served as its trustee until resigning on February 22, 2010. Bonner was appointed successor trustee effective February 23, 2010.

## A. The Pleadings

{¶ 3} Bonner filed a complaint on February 20, 2015, against Cleves, individually, as trust advisor to the Independence Trust, and as trustee of The MSJMR Irrevocable Trust Dated December 31, 2008 ("the MSJMR Trust"); and Spinazze, individually and as former trustee of the Independence Trust. Bonner filed an amended complaint on May 28, 2015.

{¶ 4} According to the allegations in Bonner's amended complaint, the corpus of the Independence Trust included (1) an LPL brokerage account worth $425,383.18,[1] and (2) 0.125 Class A voting shares of The Delp Company ("TDC"), which amounted to two percent of the company's voting stock. Bonner claimed that on February 4, 2014, she

---

[1] It was later specified that there were two LPL accounts, totaling $525,383.13.

2.

learned that while she was serving as trustee, Spinazze or Cleves caused the LPL account to be transferred to Cleves as trustee of the MSJMR Trust, of which Cleves is also a beneficiary. She further claimed that while Spinazze was still administering the Independence Trust, the TDC voting stock was transferred to Cleves.

{¶ 5} Bonner asserted eight causes of action in her amended complaint: (1) breach of fiduciary duty and breach of trust (Count I); actual fraud (Count II); constructive fraud (Count III); breach of contract (Count IV); promissory estoppel (Count V); civil conversion (Count VI); constructive trust (Count VII); and civil conspiracy (Count VIII).

{¶ 6} Cleves answered Bonner's amended complaint and asserted numerous affirmative defenses, including that her claims are barred by the statute of limitations, the doctrines of waiver and laches, accord and satisfaction, express consent, and Article IX of the Independence Trust. He attached documents that he claimed showed that the TDC voting stock was transferred with Brad's express written consent.

{¶ 7} Spinazze answered Bonner's amended complaint and asserted affirmative defenses, including, inter alia, that Bonner's claims are barred by the statute of limitations, accord and satisfaction, failure to join all necessary parties, Article IX of the Independence Trust, informed consent, and the doctrines of waiver, laches, and estoppel. Spinazze also counterclaimed and alleged that under the terms of the Independence Trust agreement and under R.C. Chapters 5807 and 5808, Bonner's claims are barred by the applicable limitations periods, and Bonner must defend and indemnify him. He maintained that the claims against him were brought without good cause, constitute

3.

frivolous and vexatious conduct, and were pursued claims against him for improper purposes.

## B. Spinazze's Motion for Summary Judgment

{¶ 8} On August 7, 2015, Spinazze moved for summary judgment. He argued that Bonner's breach of fiduciary duty, breach of trust, and breach of contract claims are all statutory "breach-of-trust" claims and are barred by the four-year repose period set forth in R.C. 5810.05(C)(1) because they were filed five years after Spinazze resigned as successor trustee of the Independence Trust. He argued that Bonner's claims for actual fraud, constructive fraud, and promissory estoppel are also breach-of-trust claims barred by the four-year repose period, and they are further barred by the four-year limitations period applicable to fraud claims because Bonner or the Independence Trust beneficiaries had notice of the alleged fraud, misrepresentations, and promises before February 2011. He argued that Bonner's civil conversion claim is barred by the repose period in R.C. 5810.05(C)(1) and the four-year statute of limitations in R.C. 2305.09(B). And he argued that Bonner's constructive trust and civil conspiracy claims cannot stand independently, and because the underlying claims are time-barred, those claims fail as a matter of law.

{¶ 9} In support of his position that Bonner's claims are time-barred, Spinazze set forth the following timeline of events:

- July 4, 1999: The Independence Trust was established for its primary beneficiaries, Cleves and Brad, Spinazze was appointed trustee,

4.

and the corpus was funded with assets including the LPL brokerage account and 0.125 Class A TDC voting shares.

- January 23, 2010: Spinazze tendered notice of his resignation as trustee of the Independence Trust effective February 22, 2010. Bonner was appointed successor trustee effective February 23, 2010.

- Before February 22, 2010: With Brad's knowledge, consent, and authorization, the TDC voting stock was transferred to Cleves as trustee of the Cleves R. Delp Revocable Trust Dated July 4, 1992 as amended, and arrangements were made to transfer the assets of the LPL brokerage account to Cleves as trustee of the MSJMR Trust.

- February 22, 2010: Spinazze's resignation as trustee of the Independence Trust became effective and he ceased performing trustee functions.

- February 23, 2010: Bonner's appointment as successor trustee became effective, giving her full and unrestricted access to the Independence Trust's accounts, records, documents, and property.

- February 26, 2010: The transfer of the assets of the LPL brokerage account to the MSJMR Trust was completed.

- February 20, 2015: Bonner filed her complaint against Cleves and Spinazze.

Spinazze maintained that the limitations period began to run no later than February 23, 2010, and had expired by the time Bonner filed her complaint on February 20, 2015.

{¶ 10} Bonner responded that the timeline provided by Spinazze cannot be trusted. She accused Spinazze and Cleves of back-dating documents, omitting dated signature lines, and representing documents as having been hand-delivered to avoid automated postage date stamps. Bonner insisted that she did not begin acting as trustee of the Independence Trust until fall of 2011. She claimed that Spinazze failed to deliver the trust property to her or to provide an accounting, he continued to act as trustee into 2011, she received no communications concerning the trust or its assets until 2011, she did not know that the voting stock and LPL account had been transferred to Cleves, and her requests for an updated accounting were ignored until February of 2012. Bonner maintained that she did not learn of the transfer of the voting stock until 2014, and she denied that Brad consented to the transfer of the TDC voting stock or LPL account.

{¶ 11} As for her legal arguments, Bonner did not deny that Ohio's trust statutes apply to her claims for breach of fiduciary duty, breach of trust, and breach of contract. Rather, she argued that she was not aware of the transfer of the LPL account until 2012, thus the repose statutes did not begin to run until then. Moreover, she claimed that because Spinazze never delivered the trust property to her, his duties as trustee continued beyond his resignation under R.C. 5807.07.

{¶ 12} Concerning her claims for actual fraud, constructive fraud, promissory estoppel, and civil conversion, Bonner insisted that those claims are not breach-of-trust

6.

claims, thus the limitations period set forth in R.C. 5810.05 is inapplicable. Instead, she claimed, R.C. 2305.09(C) provides a five-year statute of limitations for fraud and the claim did not begin to accrue until after she discovered the fraud, which, she contended, Spinazze actively concealed. (Bonner later filed a correction with the court, conceding that the statute of limitations under R.C. 2305.09(C) is four years, not five.) She denied that her claims began to accrue when Spinazze resigned as trustee. Finally, Bonner refuted Spinazze's assertion that her constructive trust claim could not survive as a stand-alone claim, and she maintained that her civil conspiracy claim is properly tethered to another cause of action because her other claims are not time-barred. Bonner insisted that additional discovery was necessary under Civ.R. 56(F).

{¶ 13} Spinazze reiterated in his reply that the limitations period in R.C. 5810.05 applies; there is no fraud exception in R.C. 5810.05; Spinazze resigned as trustee February 22, 2010; even accepting the facts asserted by Bonner as true, the latest she claims Spinazze acted on behalf of the trust is December 31, 2010—still outside the four-year statute of repose; actions that Bonner claims Spinazze took in 2011, do not demonstrate that he was continuing to act as trustee; extensive discovery had already occurred; and Bonner failed to proffer the requisite Civ.R. 56(F) affidavit.

## C. The Trial Court Judgment Granting Spinazze's Motion

{¶ 14} On March 25, 2016, the trial court granted Spinazze's motion for summary judgment. It found that it was undisputed that Spinazze had resigned as trustee on February 22, 2010, and all actions he took on behalf of the trust occurred before that date.

7.

The court agreed with Spinazze that Bonner's first six claims arose under Ohio's Trust Code and are barred by the limitations period set forth in R.C. 5810.05(C)(1). Although couched as fraud claims, the trial court characterized Counts II, III, and V of Bonner's complaint as "breach of trust" claims. And, it held, even if it were to conclude that Bonner's complaint alleged fraud, Bonner's claims would still be time-barred under R.C. 2305.09(C).

{¶ 15} On April 25, 2016, on a motion by Spinazze, the court amended its March 25, 2016 judgment to designate it a final appealable order under Civ.R. 54(B).

### D. Cleves's Summary-Judgment Motion

{¶ 16} On November 30, 2016, Cleves filed his own motion for summary judgment. First, Cleves denied that he was the trust advisor to the Independence Trust. He insisted that TDC—"a legal entity, apart from the natural persons who compose it"—was appointed trust advisor. He claimed that Bonner's claims must be dismissed on this basis alone. Cleves also maintained that even if he was the trust advisor, the court already determined that Bonner's claims are subsumed into a breach-of-trust claim under the Ohio Trust Code and are untimely. He argued that there was no discernible difference between the duties Spinazze owed as trustee and the duties owed to the trust by a trust advisor, thus the Ohio Trust Code applies equally to the claims against him. Finally, Cleves claimed that regardless of whether he had been appointed trust advisor, only Spinazze—not the trust advisor—had authority to initiate the disputed transfers of property from the Independence Trust. Given that the claims against Spinazze were

8.

dismissed as untimely (and Bonner never appealed), Cleves argued that he could not be held liable for advising or directing Spinazze relative to those transactions.

{¶ 17} Cleves also contended that even if Bonner's claims could be viewed as separate, independent claims against him, those claims are untimely given that the two transactions giving rise to Bonner's claims were completed in February of 2010, and Brad was aware of the transactions no later than July 13, 2010, as demonstrated by a recorded phone call that day during which Brad acknowledged to Cleves that the LPL account had been transferred out of the Independence Trust. Cleves maintained that Bonner's claims for breach of trust, breach of fiduciary duty, actual fraud, constructive fraud, promissory estoppel, and civil conversion were required to be filed within four years. He insisted that because Bonner's claims arose from Cleves's supposed breach of duties imposed by the trust document, Bonner cannot escape the four-year statute of limitations by framing her claim as one for breach of contract. Finally, like Spinazze, Cleves argued that Bonner's constructive trust and civil conspiracy claims could not stand because they were predicated upon time-barred claims.

{¶ 18} In asserting the limitations period as a bar to Bonner's fraud claims, Cleves sought to impute to Bonner Brad's knowledge of the transfer of the LPL account and the TDC voting stock. To that end, Cleves insisted that Bonner had allowed Brad to become the de facto trustee of the trust by (1) taking directions from Brad; (2) failing to take independent actions as trustee; (3) allowing Brad to administer the trust; (4) signing and submitting account applications at Brad's direction; (5) requesting that account

9.

statements be sent to Brad's home address; and (6) borrowing $400,000 from Brad on behalf of the Independence Trust, and signing a revolving credit note in connection with that loan, without knowing the terms of the note, how the funds would be used, or who prepared the note. Cleves also maintained that Brad told Bonner to file the lawsuit—Bonner did not investigate the claims herself, did not know why she was suing Cleves, had no specific knowledge relating to the Independence Trust, did not know who prepared an accounting of the trust even while she was trustee, and had no idea of the status of two notes reflected on the accounting as liabilities.

{¶ 19} Bonner responded that Cleves failed to address the fact that he had been sued not only in his capacity as trust advisor to the Independence Trust, but also individually and as trustee of the MSJMR Trust. She denied that the judgment in favor of Spinazze was final and appealable despite the language added by the court because Spinazze's counterclaims had not been resolved. And she insisted that Brad is not the "de facto" trustee and his knowledge did not commence the statute of limitations as to Bonner.

{¶ 20} Bonner maintained that Cleves and Spinazze conceded that they had a practice of signing documents dated one day with an effective date of another day, so the dates they advanced cannot be believed. She claimed, therefore, that a question of fact remained concerning when she became trustee of the Independence Trust. Bonner insisted that she did not begin acting as trustee until late 2011, was never provided an accounting, did not know where the trust assets were located, and had no suspicions

about the allegedly impermissible transfers until she began conducting her own investigation in 2012. She also asserted that under R.C. 5807.07, Spinazze continued to have the duties and powers of trustee because he failed to deliver the trust property to her.

{¶ 21} As for her constructive trust claim, Bonner contended that constructive trust is properly a stand-alone claim and should be imposed because Cleves, individually and as trustee of his own trust, holds the Independence Trust assets illegally. She argued that Cleves continues to serve as trust advisor because Cleves *is* TDC, and he facilitated the transfer of assets from the Independence Trust to pay off a debt he owed. Bonner insisted that Brad signed nothing to modify the Independence Trust's distributive provisions—provisions that required equal distribution of trust assets.

{¶ 22} In reply, Cleves clarified that his summary-judgment motion sought dismissal of all claims against him in all capacities. He contended that any challenge to the finality of the April 25, 2016 judgment must be made in the court of appeals; until then, the judgment dismissing the claims against Spinazze constitutes the law of the case.

{¶ 23} Cleves also claimed that information contained in Bonner's affidavit— submitted in support of her assertion that the statute of limitations had been tolled—was demonstrated at her deposition to be false. He maintained that she lied about starting her trusteeship in the fall of 2011—she signed acceptance of the trusteeship sometime before May 4, 2010, opened a Charles Schwab account as trustee on May 6, 2010, signed checks, and signed a revolving credit note as trustee on July 1, 2010. Cleves also claimed that Bonner did nothing to investigate her possible claims, she lied when she testified that

11.

her requests for information about the Independence Trust were ignored, and she did not even know why she was suing Cleves.

### E.  The Trial Court Judgment Denying Cleves's Motion

{¶ 24} The trial court denied Cleves's motion for summary judgment on August 2, 2017. It held that the limitations period in R.C. 5810.05 applied only to the claims against Spinazze, the trustee—not to the claims against Cleves.  It found that the facts of the case were clear as against Spinazze, but not as against Cleves.  It concluded that the conflicting affidavits, depositions, and supporting documents created a genuine issue of material fact precluding summary judgment.

### F.  The Trial Court's Judgment After Trial

{¶ 25} Bonner's claims against Cleves were heard by the trial court during a three-day trial that began on July 23, 2018.  In addition to evidence relating to the circumstances of the transfers, whether Brad consented to the transfers, whether Bonner and Brad knew or should have known about the transfers, and whether Brad's knowledge of the transfers could be imputed to Bonner, evidence was presented concerning a Voya life insurance policy insuring the life of Brad and Cleves's mother.  The Independence Trust had been the owner and beneficiary of this policy and the premiums had been paid by the trust with funds from the LPL account.  By the end of February 2010, after that account was transferred out of the trust, no funds were left with which to pay the premiums.  To ensure that the policy did not lapse for non-payment of premiums, the Independence Trust borrowed $400,000 from Brad on July 1, 2010, and $655,000 from

12.

Brad's trust, the BJD 2008 Trust, on November 4, 2011—Bonner as trustee signed revolving credit notes to secure these funds. The majority of those funds were used to pay the Voya premiums. In 2013, Bonner transferred the Voya policy to DelDeary, LLC, a single member LLC created by the Independence Trust. The Independence Trust then sold DelDeary to the M.J. Millennium Trust, of which Brad is a beneficiary.

{¶ 26} In addition to the evidence concerning the Voya policy, Cleves offered the following evidence at trial concerning Bonner's involvement with the Independence Trust:

(1) Bonner accepted her appointment as trustee of the Independence Trust effective February 23, 2010;

(2) On May 4, 2010, Voya was notified that Bonner was the new trustee of the Independence Trust;

(3) On May 6, 2010, Bonner opened a Schwab account as trustee of the Independence Trust;

(4) On May 20, 2010, Bonner signed a check as trustee of the Independence Trust;

(5) On July 1, 2010, Bonner signed a revolving credit note as trustee of the Independence Trust;

(6) Sometime around July 1, 2010, Bonner made a payment from the Independence Trust to Voya;

13.

(7)  On January 7, 2011, Bonner changed the Schwab mailing address to Brad's Florida residence.

Cleves offered evidence demonstrating that Brad had confronted Cleves about the transfer of the LPL account on July 13, 2010, during a recorded phone call, and Brad had executed a written consent for the transfer of the TDC voting stock.

{¶ 27} Cleves also presented evidence at trial concerning Brad's control over Bonner.  Bonner testified that she pre-signed checks as trustee of the Independence Trust, which she gave to Brad.  Brad's mailing address was used for accounts and statements relative to the Independence Trust.  Bonner filed the present lawsuit at Brad's direction without understanding the basis for it.  Bonner conceded that Brad tells her what to do with respect to the Independence Trust, she has never refused to follow any of his requests, any time she has acted in her capacity as trustee of the Independence Trust, it has been at Brad's direction, and she has never decided on her own to take any action concerning the Independence Trust.

{¶ 28} Finally, evidence was admitted at trial concerning a lawsuit that Brad and one of his trusts filed on March 18, 2014, against Cleves, the MSJMT Trust, and others in the U.S. District Court for the Northern District of Ohio.  Specifically, evidence was presented that Brad brought suit alleging, among other things, that Cleves and other defendants "caused the assets of the Delp Independence Trust, including The Delp Company shares, to be conveyed to Cleves R. Delp, his trust, and/or one or more other defendants."  In that suit, Brad sought "the restoration of the assets of the Delp

14.

Independence Trust to said trust." The court ultimately dismissed Brad's claims with prejudice as a sanction for litigation misconduct. *Bradley J. Delp Revocable Tr. v. MSJMR 2008 Irrevocable Tr.,* N.D.Ohio No. 3:14 CV 591, 2015 WL 9592531, *1 (Dec. 31, 2015), *aff'd*, *Bradley J. Delp Revocable Tr. v. MSJMR 2008 Irrevocable Tr.,* 665 Fed.Appx. 514 (6th Cir.2016).

{¶ 29} After the trial, the parties submitted proposed findings of fact and conclusions of law and responses to each other's proposed findings and conclusions. In his proposed findings and conclusions, Cleves argued, among other things, that Bonner's claims with respect to the TDC stock were barred by the doctrine of res judicata because they were the subject of the federal action. He also argued that the evidence at trial established that Bonner's claims are time-barred under R.C. 5810.05(C)(4) and 2305.09.

{¶ 30} In a judgment entered August 5, 2020, the trial court agreed that Bonner's claims were untimely and barred by res judicata. The court found that there was no question that Bonner's actions as trustee of the Independence Trust were controlled by Brad. The court described Brad as the de facto trustee who controlled all activities. It found that Brad was aware of the transfer of the LPL account in July of 2010, because he confronted Cleves about it in the recorded phone conversation on July 13, 2010. The court determined that it was "inconceivable" that Bonner did not know about the transfer, but even if she wasn't aware, she should have been. The court reasoned that before Spinazze transferred the funds from the LPL account to Cleves's trust, those funds had been used to pay the premiums on the Voya policy. While Bonner may not have received

15.

an accounting of the trust, she knew or should have known that those life insurance premiums were being paid by another source because there remained no liquidity in the Independence Trust. And, in fact, Bonner executed revolving credit notes on July 1, 2010, and November 4, 2011, to pay the premiums *because* the funds had been removed from the Independence Trust. Thus, it was clear that Bonner and Brad were aware of the transfer at least as of the time these notes were executed. Accordingly, the court held, "Bonner's claims relative to the transfer of [the LPL] accounts are time barred pursuant to the statute of limitations of R.C. 2305.09."

{¶ 31} The court also dismissed Bonner's claims relating to the TDC voting stock. As alleged by Cleves, the court found that in the 2014 federal case, Brad argued that the TDC stock had been unlawfully removed from the Independence Trust, and he sought return of those shares. The trial court held that the federal case and the present case involved the same parties. It reached this conclusion based on Bonner's testimony that it was Brad's idea to bring the claims in this case and Bonner was not sure why she was suing Cleves. The court found that Brad was the de facto trustee and was in privity with Bonner for purposes of the TDC share claim. It found that the federal case was dismissed with prejudice and is a final, valid decision on the merits by a court of competent jurisdiction, therefore, the claim cannot be refiled, and res judicata applies to the TDC voting stock claims. Accordingly, the court held, "Bonner's claims herein regarding the transfer of TDC shares out of the Independence Trust are hereby dismissed."

16.

{¶ 32} Finally, the trial court found that Cleves was not the trust advisor of the Independence Trust and did not effectuate the transfers complained of—Spinazze made the transfers with the consent of both Brad and Cleves. It concluded that the claims against Cleves as the trust advisor to the Independence Trust were, therefore, "improper and invalid." The court also found that the transfers of the LPL account and the TDC voting stock were made with the "full knowledge and consent of the beneficiaries."

{¶ 33} Bonner appealed both the April 25, 2016 summary-judgment decision and the August 5, 2020 judgment. She assigns the following errors for our review:

ASSIGNMENT OF ERROR NO. 1:

The trial court committed error by granting Appellee Spinazze's Motion for Summary Judgment.

ASSIGNMENT OF ERROR NO. 2:

The trial court committed error by holding the Plaintiff/Appellant's claims were time barred.

ASSIGNMENT OF ERROR NO. 3:

The trial court committed error by holding the Plaintiff/Appellant's claims were subject to res judicata as they related to Cleves Delp.

## II. Standard of Review

{¶ 34} Appellate review of a summary judgment is de novo, *Grafton v. Ohio Edison Co.,* 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996), employing the same standard as trial courts. *Lorain Natl. Bank v. Saratoga Apts.,* 61 Ohio App.3d 127, 129,

17.

572 N.E.2d 198 (9th Dist.1989).  The motion may be granted only when it is demonstrated:

> (1)  that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor.  *Harless v. Willis Day Warehousing Co.,* 54 Ohio St.2d 64, 67, 375 N.E.2d 46 (1978), Civ.R. 56(C).

{¶ 35} When seeking summary judgment, a party must specifically delineate the basis upon which the motion is brought, *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 526 N.E.2d 798 (1988), syllabus, and identify those portions of the record that demonstrate the absence of a genuine issue of material fact.  *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996).  When a properly supported motion for summary judgment is made, an adverse party may not rest on mere allegations or denials in the pleadings, but must respond with specific facts showing that there is a genuine issue of material fact.  Civ.R. 56(E); *Riley v. Montgomery*, 11 Ohio St.3d 75, 79, 463 N.E.2d 1246 (1984).  A "material" fact is one which would affect the outcome of the suit under the applicable substantive law.  *Russell v. Interim Personnel, Inc.*, 135 Ohio App.3d 301, 304, 733 N.E.2d 1186 (6th Dist.1999); *Needham v. Provident Bank*, 110 Ohio App.3d 817, 826,

18.

675 N.E.2d 514 (8th Dist.1996), citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 201 (1986).

### III.  Law and Analysis

{¶ 36} In her first assignment of error, Bonner argues that the trial court erred in granting summary judgment to Spinazze on April 25, 2016.[2]   In her second and third assignments of error, Bonner argues that the trial court erred in its August 5, 2020 judgment when it concluded that her claims against Cleves were barred as untimely and subject to the doctrine of res judicata.

{¶ 37} We begin by addressing the trial court's August 5, 2020 judgment in favor of Cleves—Bonner's second and third assignments of error.  We then turn to its April 25, 2016 judgment in favor of Spinazze.

### A.  The August 5, 2020 Judgment

{¶ 38} Bonner's second and third assignment of error challenge the trial court's August 5, 2016 judgment, rendered after trial.  "In an appeal from a civil bench trial, we generally review the trial court's judgment under a manifest-weight standard of review."  *Mike McGarry & Sons, Inc. v. Construction Resources One, LLC,* 2018-Ohio-528, 107 N.E.3d 91, ¶ 90 (6th Dist.), citing *United States Fire Ins. v. Am. Bonding*

---

[2] Bonner refers to the judgment as having been issued March 25, 2016.  The court amended its judgment on April 25, 2016, to render it immediately final and appealable. Spinazze argued that Bonner's appeal of this decision was untimely because it was not filed within 30 days of April 25, 2016.  In a decision and judgment dated January 7, 2021, we found that the clerk never completed service of the April 25, 2016 judgment, therefore, under App.R. 4(A)(3), the time for filing an appeal from this judgment never began to run.  *Bonner v. Delp*, 6th Dist. Lucas No. L-20-1147 (Jan. 7, 2021).

19.

*Co.*, 1st Dist. Hamilton Nos. C-160307 & C-160317, 2016-Ohio-7968, ¶ 16-17. "We weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving conflicts in the evidence, the trial court clearly lost its way and created such a manifest miscarriage of justice that its judgment must be reversed and a new trial ordered." *Id.,* citing *Eastley v. Volkman*, 132 Ohio St. 3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 20. "Where, however, the trial court's judgment is based upon a question of law, we review the trial court's determination of that issue de novo." *Id.,* citing *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St. 3d 352, 2008-Ohio-938, 884 N.E.2d 12, ¶ 34.

### 1. *Statute of Limitations*

{¶ 39} In her second assignment of error, Bonner argues that the trial court erred when it dismissed as untimely her claims against Cleves. She challenges the trial court's decision imputing Brad's knowledge to Bonner, arguing that Ohio does not recognize the concept of a "de facto trustee." She insists that Bonner was the actual trustee, Brad's knowledge could not properly be imputed to her, and the evidence demonstrates that Bonner did not become aware of the disputed transactions until February 9, 2012, when she received an accounting. Bonner also contends that there was no reason she should have known of the transfers given that her requests for an accounting were ignored and she did not know what assets were in the trust before she became trustee. She denies that Brad's payment of the Voya policy premiums should have alerted her to the fact that transfers had been made from the trust.

20.

**{¶ 40}** Notably, Bonner does not challenge the trial court's determination that Cleves was not the trust advisor and did not effectuate the transfers complained of here. Accordingly, Bonner's claims for breach of fiduciary duty, breach of trust, breach of contract, and civil conversion (premised on Cleves's position as trust advisor) are not at issue in this appeal.

**{¶ 41}** Cleves responds that Bonner's fraud-related claims are time-barred under R.C. 2305.09 and are not subject to the "discovery rule" because there was no evidence of fraud and the trustee and beneficiaries knew of and consented to the transactions. Cleves also maintains that Bonner is chargeable with Brad's knowledge because she allowed him to control the trust. And, he claims, even if Bonner did not know about the transactions, she should have known given that she took several actions as trustee throughout 2010 and early 2011.

**{¶ 42}** Under R.C. 2305.09(C), an action for fraud "shall be brought within four years." The transactions at issue here occurred before February 22, 2010 (transfer of the TDC voting stock) and February 26, 2010 (transfer of the LPL account). Ordinarily, this would mean that the statute of limitations would begin to run on these dates. But Bonner claims that she did not discover the transactions until much later—2012, or perhaps even 2014.

**{¶ 43}** R.C. 2305.09 provides that an action for fraud does not accrue "until the fraud is discovered." This is known as "the discovery rule." Ohio courts have explained that under the discovery rule, where there has been a claim of fraud, the "cause of action

21.

accrues, and the limitations period begins to run, when the plaintiff discovers or, through the exercise of reasonable diligence, should have discovered the fraud." *Fordyce v. Hattan*, 2019-Ohio-3199, 141 N.E.3d 574, ¶ 27 (2d Dist.). In *Cundall v. U.S. Bank*, 122 Ohio St.3d 188, 2009-Ohio-2523, 909 N.E.2d 1244, ¶ 30, the Ohio Supreme Court explained that this standard does not require the victim to possess "'concrete and detailed knowledge'" of the alleged fraud; "'rather, the standard requires only facts sufficient to alert a reasonable person of the *possibility* of fraud.'" *Id.,* quoting *Palm Beach Co. v. Dun & Bradstreet, Inc.*, 106 Ohio App.3d 167, 171, 665 N.E.2d 718 (1st Dist.1995). Moreover, "'*constructive* knowledge of facts, rather than *actual* knowledge of their legal significance, is enough to start the statute of limitations running under the discovery rule.'" (Emphasis in original.) *Id.*, quoting *Flowers v. Walker*, 63 Ohio St.3d 546, 549, 589 N.E.2d 1284 (1992).

{¶ 44} The trial court concluded that Brad consented to the transactions that Bonner now challenges, therefore, there was no fraud. This would mean that the discovery rule does not apply. The court also concluded that Brad was the de facto trustee, implying that his knowledge is imputable to Bonner. But we need not review either of these conclusions because we agree with the trial court that even if the discovery rule applies and even if Bonner is not charged with Brad's knowledge, Bonner herself

knew *or should have known* no later than July 1, 2010, that the LPL account had been transferred out of the Independence Trust.[3]

{¶ 45} After listening to the evidence and making credibility determinations, the trial court found that it was "inconceivable" and "simply not plausible" that Bonner was unaware that the transfer of the LPL account occurred. This was in large part based on the fact that (1) the trust lacked the liquidity to pay the Voya premiums, necessitating that they be paid from another source, and (2) Bonner executed revolving credit notes—including one on July 1, 2010—and testified at trial that she did so for the purpose of making premium payments on the Voya Policy.

{¶ 46} This court has recognized that "[i]nformation sufficient to alert a reasonable person to the possibility of wrongdoing gives rise to a party's duty to inquire into the matter with due diligence. Once sufficient indicia of fraud are shown, a party cannot rely on its unawareness * * * to lull it into a false security to toll the statute." (Citations omitted.) *FirstMerit Bank, N.A. v. Burdine,* 6th Dist. Ottawa No. OT-13-008, 2014-Ohio-1670, ¶ 36, citing *Residential Funding Co., LLC, v. Thorne,* 6th Dist. Lucas No. L-09-1324, 2010-Ohio-4271, ¶ 56.

{¶ 47} Here, even if Bonner did not know of the transfer of the LPL account on February 23, 2010—the date she was appointed trustee—she borrowed $400,000 from Brad on behalf of the Independence Trust on July 1, 2010, and executed a revolving

---

[3] We do note that with respect to the TDC voting stock, Cleves offered a written consent for transfer of shares, executed by Brad. Brad never adequately explained why this consent is not effective.

23.

credit note. It was incumbent on her as trustee to understand why she needed to borrow this money. Access to this information could have been obtained easily enough given that Brad was receiving the LPL account statements at his home address, it was Brad who was lending the money to the trust, and Brad was directing her every decision respecting the trust—including with respect to the need for the trust to borrow money. All these facts were sufficient to alert Bonner to the possibility of wrongdoing and triggered a duty to inquire into the matter with due diligence. This means that the statute of limitations began running, at the latest, on July 1, 2010—more than four years before Bonner filed her complaint. Accordingly, we find that the trial court did not lose its way when it concluded that Bonner knew or should have known that the LPL account had been transferred out of the Independence Trust, and her claims relating to this transfer were time-barred.

{¶ 48} Accordingly, we find Bonner's second assignment of error is not well-taken.

### 2. Res Judicata

{¶ 49} In her third assignment of error, Bonner argues that the trial court erred when it concluded that her claims against Cleves were barred by res judicata. While she acknowledges that the federal decision was a decision on the merits, Bonner argues that res judicata does not bar her claims because (1) the parties in the federal case and the probate case were not the same; (2) the action she brought in the probate court ("deal[ing] with the administration of a trust") could not have been brought in the federal case

24.

("request[ing] the court to declare that Brad was still an owner of The Delp Company"); and (3) the state and federal cases did not arise from the same transaction or occurrence.

{¶ 50} Cleves responds that res judicata applies to a second action involving the same parties "or their privies," and Ohio courts take a broad approach in determining privity for res judicata purposes. He argues that there is privity between Bonner and Brad because (1) "a trustee is in privity with the trust and the beneficiaries of the trust for purposes of establishing res judicata"; (2) Brad's control over Bonner and Bonner's reliance on Brad in bringing the action against Cleves demonstrates that Brad and Bonner are "close enough" for res judicata purposes; and (3) Brad and Bonner share a mutuality of interest and identity of desired result as it concerns the TDC voting stock.

{¶ 51} Cleves insists that Bonner's claims could have been brought in federal court because they were not "premised upon the administration of a trust." Rather, he argues, Bonner brought claims against him as a third-party to the Independence Trust, and both Brad and Bonner alleged the wrongful removal of the TDC voting stock from the Independence Trust.

{¶ 52} Finally, Cleves contends that "transaction" or "occurrence" is interpreted broadly for res judicata purposes. He maintains that Bonner here seeks the same relief that Brad sought in the federal suit—the return to the Independence Trust of the TDC voting stock and related proceeds. He insists that the witnesses and evidence would have been the same in both actions. Cleves claims that to allow Bonner to procure the same relief sought by Brad in the federal suit would circumvent the sanction handed down by

25.

the trial judge in *Bradley J. Delp Revocable Tr.*, N.D.Ohio No. 3:14 CV 591, 2015 WL 9592531.

{¶ 53} "Under the doctrine of res judicata, [a] valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." (Internal citations and quotations omitted.) *Hughes v. Calabrese*, 95 Ohio St.3d 334, 2002-Ohio-2217, 767 N.E.2d 725, ¶ 12. An action will be barred by res judicata where a court finds the following four factors: "(1) a prior final, valid decision on the merits by a court of competent jurisdiction; (2) a second action involving the same parties, or their privies, as the first; (3) a second action raising claims that were or could have been litigated in the first action; and (4) a second action arising out of the transaction or occurrence that was the subject matter of the previous action." (Citations omitted.) *Portage Cty. Bd. of Commrs. v. Akron*, 109 Ohio St.3d 106, 2006-Ohio-954, 846 N.E.2d 478, ¶ 84.

{¶ 54} Bonner does not dispute that the federal decision is a final, valid decision on the merits by a court of competent jurisdiction. Rather, she disputes the second, third, and fourth factors. We discuss each of these factors below.

### a. The Same Parties

{¶ 55} To invoke the doctrine of res judicata, "one of the requirements is that the parties to the subsequent action must be identical to or in privity with those in the former action." *Kirkhart v. Keiper*, 101 Ohio St.3d 377, 2004-Ohio-1496, 805 N.E.2d 1089, ¶ 8, citing *Johnson's Island, Inc. v. Danbury Twp. Bd. of Trustees*, 69 Ohio St.2d 241, 243,

26.

431 N.E.2d 672 (1982). What constitutes privity is "somewhat amorphous," however Ohio courts apply a broad definition in determining whether the relationship between the parties is close enough to invoke the doctrine. *Kirkhart* at ¶ 8; *Brown v. Dayton*, 89 Ohio St.3d 245, 248, 730 N.E.2d 958 (2000). "'[A] mutuality of interest, including an identity of desired result,' may create privity." *Id.*

{¶ 56} Here, the mutuality of interest and identity of desired result are clear. Bonner filed the present action at Brad's direction. She did not investigate the claims on her own and was not even sure why she was suing. She filed suit at Brad's insistence and deferred to him entirely. What's more, Bonner is trustee of the Independence Trust and Brad is one of its beneficiaries. Ohio courts have recognized that "[a] trustee is in privity with the trust and the beneficiaries of the trust for purposes of establishing res judicata." *Jarvis v. Wells Fargo Bank*, 7th Dist. Columbiana No. 09 CO 6, 2010-Ohio-3283, ¶ 35, citing *Forney v. Climbing Higher Enterprises, Inc.,* 158 Ohio App.3d 338, 2004-Ohio-4444, 815 N.E.2d 722, ¶ 21-22 (9th Dist.).

{¶ 57} Bonner maintains that "it is illogical to assert that privity applies to a trustee in actions taken by individual beneficiaries who owe no duty to the trustee or other beneficiaries." Perhaps in some cases, her argument would have merit and privity would not be found. But here, Bonner conceded that Brad has made all the decisions relating to the trust and has directed all of her activity, including the decision to file the present lawsuit. Certainly, under the circumstances of *this* case, Bonner and Brad are in privity.

27.

{¶ 58} We, therefore, find that the second action here involved the same parties as the federal case for purposes of establishing res judicata.

### b. Claims Were or Could Have Been Litigated in the First Action

{¶ 59} Bonner argues that her claims could not have been brought in federal court because they concern the administration of a trust. She claims that state court was the only venue to bring her claims.

{¶ 60} Cleves insists that Bonner's claims against him were not premised on the administration of a trust—they were basic claims for breach of fiduciary duty, fraud, promissory estoppel, conversion, and conspiracy. He maintains that both actions were premised on the allegedly unlawful removal of the TDC voting stock from the Independence Trust, and he emphasizes that Brad *did* assert claims for breach of fiduciary duty and equitable relief in that action and could have asserted the additional claims that Bonner asserted here.

{¶ 61} Brad alleged in the federal complaint that Cleves and others "caused the assets of the Delp Independent Trust, including The Delp Company shares, to be conveyed to Cleves R. Delp, his trust, and/or one or more other defendants." Count Three of his complaint—captioned "Equitable Relief"—alleged that "equity requires the Court to decree that * * * the 2% of The Delp Company shares formerly held by the Delp Independence Trust must be returned to said trust * * *." In his prayer for relief, Brad sought, inter alia, "the restoration of the assets of The Delp Independence Trust to said trust."

28.

{¶ 62} Bonner cites R.C. 5815.28 for her position that state court was the only venue where she could pursue her claims relating to the transfer of the TDC voting stock. In fact, R.C. 5815.28 addresses trusts for supplemental services for disabled individuals. Presumably, Bonner cited this statute in error. Aside from this mistaken reference, Bonner cites no other authority precluding federal-court jurisdiction over the various claims asserted against Cleves in the present action.

{¶ 63} Given the trial court's findings that Spinazze was responsible for administering the trust, and TDC—not Cleves—was the trust advisor, the Ohio Trust Code is inapplicable to the claims Bonner asserted against Cleves relating to the transfer of the TDC stock. Bonner has cited no applicable authority that would have precluded Brad from asserting additional claims against Cleves in federal court.

{¶ 64} We, therefore, find that Bonner's claims against Cleves could have been litigated in the first action.

### c. Arising from the Same Transaction or Occurrence

{¶ 65} Bonner argues that the present case and the federal case do not involve the same transaction or occurrence. She claims that in the federal action, Brad asked the court to declare that he remained an owner of TDC, whereas the present case involves the administration of a trust. Cleves responds that the federal lawsuit was much more expansive than a mere declaratory judgment action. He maintains that Brad sought the same relief that Bonner seeks here—return of the voting stock to the Independence

29.

Trust—and if the federal action had not been dismissed with prejudice, the witnesses and evidence would have been identical.

{¶ 66} In *Highfield v. Pietrykowski*, 6th Dist. Ottawa No. OT-16-008, 2016-Ohio-5695, ¶ 15, we held that res judicata barred appellant's second suit where both lawsuits arose out of the same transaction—"the accounting services that appellant provided by preparing tax returns for appellees, and the compensation that appellees allegedly owed appellant for his services." We concluded that "[t]he only difference between appellant's first and second complaints was the theory upon which he claimed he was entitled to relief." *Id.*

{¶ 67} Here, both this suit and the federal suit challenge the same transaction—the transfer of the TDC voting stock from the Independence Trust to Cleves's trust. Both suits sought to have the voting stock returned to the Independence Trust. And both suits would have utilized the same evidence and witnesses. While the specific claims against Cleves may not have been identical in both suits, the same relief was requested in both cases. We find that the present case and the federal case arose out of the same transaction or occurrence and Bonner's claims against Cleves relating to the transfer of the voting stock are barred by the doctrine of res judicata.

{¶ 68} We find Bonner's third assignment of error is not well-taken.

**B. The April 25, 2016 Judgment**

{¶ 69} In its April 25, 2016 judgment, the trial court concluded that Bonner's claims against Spinazze arose under Ohio's Trust Code and are barred by the limitations

30.

period set forth in R.C. 5810.05(C)(1), which provides, in relevant part, that a judicial proceeding by a beneficiary against a trustee for breach of trust must be commenced within four years "after * * * the removal, resignation, or death of the trustee * * *." The trial court concluded that Bonner's claims are time barred under R.C. 5810.05(C)(1) because they were filed more than four years after Spinazze resigned as trustee on February 22, 2010.

{¶ 70} In her first assignment of error, Bonner argues that summary judgment in favor of Spinazze under R.C. 5810.05(C)(1) could be granted only if Spinazze actually resigned as trustee *and* ceased all trust-related activity in February of 2010. Bonner argues that there are questions of fact regarding whether Spinazze ceased acting as trustee as of February 22, 2010. Bonner also argues that Spinazze failed to deliver all of the trust property to her in 2010—which, according to Bonner, means that Spinazze continued to have the "duties" and "powers" of a trustee beyond his resignation date under R.C. 5807.07(A), so the four-year period of R.C. 5810.05(C)(1) should not have been triggered as of that date. We will address both arguments in turn.

{¶ 71} First, Bonner maintains that there are factual disputes concerning whether Spinazze ceased acting as trustee on February 22, 2010, as he has asserted. Specifically, she claims that on July 23, 2010, Spinazze purported to hand-deliver a letter to Brad explaining that while the Independence Trust called for the equal division of assets upon Evelyn's death, the decision had been made not to split the trust. (Bonner insists that this letter was not received by Brad until February of 2011, Bonner was not copied on it, and

31.

the letter was back-dated.) Bonner also claims that Spinazze, on August 23, 2010, emailed Cleves and Brad a division of trust memorandum arranging for the trust to be evenly divided.

{¶ 72} In response, Spinazze argues that he affirmatively proved that he resigned as trustee effective February 22, 2010, and Bonner conceded as much in her amended complaint. He denies that the emails referenced by Bonner are evidence of his continued administration of the trust, but he contends that even if they are, they do not constitute evidence that he continued to act as trustee into February of 2011—which would be necessary to show that Bonner's complaint, filed in February of 2015, was within the applicable four-year statute of limitations.

{¶ 73} The trial court observed that Bonner admitted in her answer to Spinazze's amended counterclaim that she was appointed trustee on or about February 22, 2010. Because there was no allegation that Spinazze and Bonner had at any time served as co-trustees, the trial court concluded that Spinazze lacked authority to act as trustee after February 22, 2010. Upon de novo review, we agree with the trial court's conclusions. There is no question that Spinazze did, in fact, resign as trustee as of February 22, 2010, and the evidence submitted by Bonner does not create a genuine dispute of material fact on that issue.

{¶ 74} But Bonner also argues that—despite Spinazze's resignation as trustee—he failed to deliver the trust property to her, did not provide an accounting, did not tell her about the transfers, and failed to communicate with her at all in 2010. She relies upon

32.

R.C. 5807.07(A)—which provides that "[u]nless a cotrustee remains in office or the court otherwise orders, *and until the trust property is delivered to a successor trustee* or other person entitled to it, a trustee who has resigned or been removed has the duties of a trustee and the powers necessary to protect the trust property" (emphasis added)—to argue that her claims are timely because Spinazze continued to have the duties and powers of trustee beyond February 22, 2010.

{¶ 75} In the trial court, Spinazze did not specifically address Bonner's allegation that he "did not deliver the Trust property" in 2010. Rather, he argued (and the trial court found) that the applicable four-year statute of limitations under R.C. 5810.05(C) was triggered by his resignation. Neither the trial court nor Spinazze specifically addressed Bonner's claim that Spinazze continued to serve as trustee under R.C. 5807.07(A) because he failed to deliver the trust property to her. And, on appeal, Spinazze does not specifically respond to Bonner's argument relating to his supposed failure to deliver "trust property."

{¶ 76} But Bonner cites no authority indicating that R.C. 5807.07(A) affects a trustee's resignation date for purposes of commencing the limitations period under R.C. 5810.05(C)(1). On its face, R.C. 5810.05(C) states that an action by a beneficiary against a trustee "*must* be commenced within four years" after the first of several events to occur—one of which is the "removal, resignation, or death of the trustee" (emphasis added). There is no exception for instances in which, under R.C. 5807.07(A), a trustee

33.

"has resigned or been removed" *but* nonetheless retains the "powers" and "duties" of a trustee because the trust property has not been delivered.

{¶ 77} Regardless, even if we assume that R.C. 5807.07(A) creates an exception to the explicit pronouncement of R.C. 5810.05(C)(1) that an action "must be commenced within four years" after the "removal, resignation, or death of the trustee," we must still affirm the trial court's grant of summary judgment.

{¶ 78} In response to Spinazze's motion for summary judgment, Bonner submitted an affidavit in which she stated that "[s]ometime in the fall of 2011, [she] became the successor trustee of the Independence Trust," "Spinazze did not deliver the Trust property to [her] in 2010," and "[she] did not sign any documentation in 2010 regarding the Independence Trust, including an acceptance of trusteeship."[4] In addition, Bonner submitted an affidavit from Brad, in which he averred that he was "not aware of any actions [Bonner] took as trustee before the fall of 2011."

{¶ 79} At trial on Bonner's claims against Cleves, these averments were proven to be false. Contrary to Bonner and Brad's representations, evidence admitted at the trial showed that Bonner performed the following trust-related tasks in 2010:

---

[4] Bonner does not specify what trust property Spinazze failed to deliver. There is nothing in the record to indicate that there was tangible, personal property owned by the trust. The only property the parties reference is the TDC voting stock and the LPL account (which Bonner claimed had been transferred *out* of the trust) and the Voya policy. Accordingly, when Bonner claims that Spinazze did not transfer the trust property to her, she must mean that Spinazze failed to deliver the means of obtaining access to policies and accounts.

34.

• Bonner signed an acceptance of the trusteeship dated January 23, 2010;

• Change-of-trustee paperwork was submitted to Voya on May 4, 2010, identifying Bonner as the trustee, and Bonner's signed acceptance of trusteeship was attached to this paperwork;

• Bonner signed paperwork as trustee for the Independence Trust, opening an account with Charles Schwab on May 6, 2010; and

• Bonner executed a promissory note on July 1, 2010, as trustee for the Independence Trust, and borrowed $400,000 from Brad, which was then used to make premium payments on the Voya policy.

{¶ 80} This evidence was not before the trial court when it granted Spinazze's motion for summary judgment. Generally, when reviewing a ruling on a summary-judgment motion, an appellate court must restrict its consideration to the evidentiary materials that were properly before the court when it ruled on the motion. *Guernsey Bank v. Milano Sports Ents. L.L.C.,* 177 Ohio App.3d 314, 2008-Ohio-2420, 894 N.E.2d 715, ¶ 30 (10th Dist.). However, our de novo review of a summary-judgment motion permits us to affirm a trial court judgment even if we find that the trial court reached the correct conclusion albeit for different reasons. *Singer v. Fairborn*, 73 Ohio App.3d 809, 814, 598 N.E.2d 806 (2d Dist.1991). Moreover, our ultimate responsibility as an intermediate appellate court is to correct errors. We do not believe that we are required to ignore evidence—evidence admitted within the same proceedings that proves

35.

summary-judgment evidence to be false—merely because it became part of the record after the summary-judgment decision. Substantial justice would not be served if we were to ignore the evidence presented at trial that demonstrated the falsity of crucial averments in Bonner's affidavits.

{¶ 81} In *Continental Ins. Co. v. Whittington*, 71 Ohio St.3d 150, 642 N.E.2d 615 (1994), syllabus, the Ohio Supreme Court held that "[a]ny error by a trial court in denying a motion for summary judgment is rendered moot or harmless if a subsequent trial on the same issues raised in the motion demonstrates that there were genuine issues of material fact supporting a judgment in favor of the party against whom the motion was made." The situation here presents the opposite issue—the evidence admitted at trial demonstrated that there were *not* genuine issues of material fact precluding summary-judgment. Nevertheless, we see no reason why the principal enunciated in *Whittington* would not apply here.

{¶ 82} In *Whittington,* an employee ("driver-employee") was involved in a single-vehicle accident while driving his employer's vehicle for his own personal use. The employer's insurance policy would provide coverage if the driver-employee was using the vehicle with his employer's permission. The insurer filed a declaratory judgment action seeking a declaration that it owed no duty to defend or indemnify because the driver-employee did not have his employer's permission to use the vehicle for personal use.

36.

{¶ 83} During discovery, the employer produced no written policy prohibiting personal use of company vehicles, but he testified that he gave the driver-employee express permission to use the company vehicle to drive several employees home from work, take the vehicle home and park it in front of his house overnight, and pick up the employees the next morning to bring them to work. The driver-employee drove the employees to their homes, drove home, and parked the vehicle, but later—contrary to his employer's instructions—he drove it to a friend's house, then took the vehicle out with a number of passengers, including two other men who had worked for the company ("passenger-employees"). This was when the accident occurred.

{¶ 84} The driver-employee admitted at his deposition that his personal use of the van at the time of the accident exceeded the scope of the permission that had been granted to him. He testified that company vehicles were ordinarily not permitted to be used by employees for personal pursuits. But the passenger-employees (who presumably sought to recover under the insurance policy) testified that employees regularly used company vehicles for personal purposes.

{¶ 85} The insurer moved for summary judgment, arguing that the driver-employee had admittedly exceeded the scope of permission granted to him to use the vehicle. The passenger-employees opposed the motion, urging that there were questions of fact concerning whether the driver-employee had *implied* permission to use the vehicle for personal purposes at the time of the accident.

37.

{¶ 86} The trial court denied the insurer's motion for summary judgment, and found that there were genuine issues of material fact to be determined regarding the scope of the permitted use of the vehicle. The matter proceeded to a jury trial.

{¶ 87} At trial, the driver-employee testified that he had lied at his deposition when he claimed that the employer had not authorized personal use of company vehicles. To the contrary, he testified that company vehicles were, as a matter of custom and practice, frequently used by employees for personal purposes, and he relied on this custom and practice when he used the vehicle for personal reasons on the night of the accident. He claimed that he had lied at his deposition because he was afraid of losing his job.

{¶ 88} The jury ultimately concluded that the driver-employee did not have express permission to use the company vehicle for personal purposes, but did have implied permission to do so. The trial court entered judgment consistent with the jury's findings and held that the driver-employee was an "insured" and coverage for the accident was available. The insurer appealed, and argued among other things, that the trial court erred in denying its motion for summary judgment.

{¶ 89} The court of appeals held that "the question whether a trial court errs in granting or denying a motion for summary judgment hinges upon a review of the evidence that was before the trial court at the time the decision was made." *Id.* at 155. "[R]eviewing the record as it existed at the time the trial court denied the motion," the appellate court concluded that the deposition testimony demonstrated that the driver-

38.

employee had no permission, express or implied, to use the vehicle for personal purposes. *Id.* at 154. It reversed the judgment of the trial court and ordered that summary judgment be entered in favor of the insurer.

{¶ 90} The Ohio Supreme Court reversed the decision of the court of appeals. It held that "even if the trial court erred in denying [the insurer's] motion for summary judgment, that error did not rise to the level of reversible error." *Id.* at 155. It found that the court of appeals failed to consider Civ.R. 61, which states:

> No error in either the admission or the exclusion of evidence and no error or defect in *any* ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court *at every stage* of the proceeding must disregard *any* error or defect in the proceeding which does not affect the substantial rights of the parties. (Emphasis in original.)

{¶ 91} The court found that "substantial justice was done at the trial court level following the trial on the merits" because the trial evidence revealed the existence of genuine issues of material fact. *Id.* It explained: "While the record before the trial court at the time it denied the motion may not have reflected that situation, the facts as we now know them" showed that the insurer was liable to provide coverage. *Id.* at 156. "Any error in the denial of the motion was rendered moot or harmless since a full and

39.

complete development of the facts at trial * * * showed that appellants were entitled to judgment." *Id.* The court found that substantial justice would not be served by setting aside the jury's findings.

{¶ 92} Here, too, even if R.C. 5807.07(A) tolls the limitations period under R.C. 5810.05(C)(1), we find that substantial justice would not be served by ignoring the evidence admitted at trial, which demonstrated that Bonner and Brad were untruthful in their summary-judgment affidavits. That evidence showed that the trust property was delivered to Bonner and she did perform duties as trustee of the Independence Trust in 2010, rendering untimely her claims brought on February 20, 2015.

{¶ 93} Finally, Bonner argues in her reply that the statute of limitations set forth in R.C. 2305.09(C) —not R.C. 5810.05—applies to her fraud-based claims against Spinazze. But even applying R.C. 2305.09(C), her claims would still be time-barred for the reasons that her claims against Cleves are time-barred. Additionally, she argues that her constructive trust claim is still viable on its own. But "[a] constructive trust is a remedy, not a cause of action." *Graham v. City of Lakewood*, No. 106094, 2018-Ohio-1850, 113 N.E.3d 44, ¶ 58 (8th Dist.). If a cause of action seeking the imposition of a constructive trust as a remedy is barred by a statute of limitation, the imposition of a constructive trust is also barred. *Cundall v. U.S. Bank,* 122 Ohio St.3d 188, 2009-Ohio-2523, 909 N.E.2d 1244, ¶ 40. Because Bonner's other claims are time-barred, so is her request for imposition of a constructive trust.

{¶ 94} We find Bonner's first assignment of error is not well-taken.

40.

## IV. Conclusion

{¶ 95} Spinazze resigned as trustee on February 22, 2010, and Bonner became successor trustee the next day. Any assertions that Bonner made indicating that trust property was not delivered to her and that she did not act as trustee in 2010, were proven to be false. Her claims against Spinazze were, therefore, barred as untimely under the Ohio Trust Code and R.C. 2305.09. We find Bonner's first assignment of error is not well-taken.

{¶ 96} Bonner was or should have been aware of the transfer of the LPL account more than four years before filing her complaint on February 20, 2015. Her claims were, therefore, untimely under R.C. 2305.09. We find Bonner's second assignment of error is not well-taken.

{¶ 97} Res judicata barred Bonner from bringing claims against Cleves pertaining to the transfer of the TDC voting stock because Brad could have brought those claims against Cleves in *Bradley J. Delp Revocable Tr.,* N.D.Ohio No. 3:14 CV 591. Bonner and Brad were in privity, the claims could have been litigated in the first action, and the claims arose out of the same transaction or occurrence. We find Bonner's third assignment of error is not well-taken.

{¶ 98} We affirm the April 25, 2016, and August 5, 2020 judgments of the Lucas County Court of Common Pleas, Probate Division. Bonner is ordered to pay the costs of this appeal under App.R. 24.

Judgment affirmed.

41.

L-20-1147
Bonner, Trustee, ect. v. Delp, et al.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.

Christine E. Mayle, J.
_____
JUDGE

David A. D'Apolito, J.
CONCUR.
_____
JUDGE

_____
JUDGE

Judge, David A. D'Apolito, Seventh District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.