[Cite as *Renaissance Mgt., Inc. v. Jay-Lor Corp.*, 2011-Ohio-2792.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 95585**

---

# RENAISSANCE MANAGEMENT, INC.

PLAINTIFF-APPELLANT

vs.

# JAY-LOR, CORP. d.b.a. CAFÉ 56

DEFENDANT-APPELLEE

---

## JUDGMENT:
AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV- 692522

**BEFORE:**   Blackmon, P.J., Stewart, J., and Sweeney, J.

**RELEASED AND JOURNALIZED:**   June 9, 2011

**ATTORNEY FOR APPELLANT**

Mark I. Wachter
Wachter Kurant, LLC
30195 Chagrin Blvd., Suite 300
Cleveland, Ohio 44124


**ATTORNEYS FOR APPELLEE**

Lewis A. Zipkin
David M. Smith
Zipkin Whiting Co., L.P.A.
The Zipkin Whiting Building
3637 South Green Road
Beachwood, Ohio 44122


PATRICIA ANN BLACKMON, P.J.:

**{¶ 1}** Appellant Renaissance Management, Inc. ("Renaissance") appeals the trial court's dismissal of its complaint against Jay-Lor Corp. d.b.a. Café 56 ("Jay-Lor") and assigns the following errors for our review:

> **"I. The trial court erred by granting the defendant's motion to dismiss, pursuant to Rule 41(B)(2) of the Ohio Rules of Civil Procedure."**

> **"II. The trial court's finding of fact number 25 is against the manifest weight of the evidence."**

**{¶ 2}** Having reviewed the record and pertinent law, we affirm the trial court's decision. The apposite facts follow.

**{¶ 3}** Beginning in 1973, and continuing through October 2006, Marlene Leitson, the president of Jay-Lor, operated a restaurant business, most recently known as Café 56, on the premises located at 23230 Chagrin Boulevard, Beachwood, Ohio. On October 21, 1999, Leitson signed a five-year lease with Herbert Chisling, the president of Renaissance. The lease between the parties would cover the period of February 1, 2003 through January 31, 2008, for a total amount of $489,157.80, payable in monthly installments of $8,152.63.

**{¶ 4}** In the summer or early fall of 2006, as a result of the competitive restaurant environment, Marlene Leitson and her son, Jay Leitson, who was also an officer of Jay-Lor, approached Chisling about their idea of converting the restaurant to a supper club format, with live music. Chisling, however, was not

**{¶ 5}** excited about the idea of a supper club at the location and suggested that Jay-Lor consider converting the restaurant into a delicatessen. Jay-Lor had no expertise in operating a delicatessen and opted to find a buyer for the restaurant.

**{¶ 6}** In the early part of October 2006, Jay-Lor located Z.T.Y., Inc. ("ZTY"), a business that was interested in buying the restaurant, assuming the remainder of the lease, and, most importantly, who was very familiar with operating a delicatessen. Jay-Lor introduced Tony Savy, one of ZTY's

officers, to Chisling, and indicated that ZTY desired to purchase the restaurant and take over the lease. In the same month, Jay-Lor sold all its assets and their liquor license to ZTY for the sum of $70,000.

{¶ 7} Subsequent to Jay-Lor's sale of the restaurant, ZTY and Renaissance entered in a five-year lease agreement for the premises. The lease covered the period of October 1, 2006 through September 30, 2011. In addition, Renaissance granted ZTY three months of free rent for signing the lease.

{¶ 8} On April 10, 2007, ZTY defaulted on the lease agreement and abandoned the premises. After ZTY's default, Renaissance entered into another lease for the premises with JRS Savy's, Inc. ("JRS"), which was owned and operated by Tony Savy, the principal of ZTY. This lease covered the period of April 1, 2007 through March 31, 2012.

{¶ 9} After making one rent payment, JRS defaulted on the lease. On August 17, 2007, as a result of a dispute between the partners of JRS, the restaurant closed. Thereafter, JRS transferred the restaurant's assets and liquor license, valued at approximately $122,000, to Renaissance.

{¶ 10} In January 2008, Renaissance filed suit against JRS for defaulting on the lease. Renaissance obtained a judgment against JRS for approximately $460,000, the unpaid balance of the lease agreement.

However, before Renaissance could collect on the judgment, JRS's principal filed for bankruptcy protection.

{¶ 11} On May 12, 2009, Renaissance filed a suit against Jay-Lor to recover rents due from October 2006, the time they vacated the restaurant, through January 2008, the end of the lease term. After significant motion practice, the parties filed cross-motions for summary judgment. The trial court denied the respective motions and conducted a bench trial on May 28, 2010.

{¶ 12} At the trial, Jay Leitson testified that when he and his mother introduced Savy as the potential purchaser of the restaurant, Chisling was excited because Savy had experience in running a delicatessen, which was the business model that Chisling thought was more appropriate for the location. Jay Leitson testified that they requested an assignment of the balance of the lease to ZTY, but Chisling refused and opted to enter into a five year lease with ZTY. The new lease included the balance of Jay-Lor's lease with Renaissance.

{¶ 13} Jay Leitson testified that Renaissance never notified them at the time ZTY and JRS defaulted on their respective leases. Jay Leitson stated that it was not until August 2008, that Chisling sent a letter threatening to sue Jay-Lor for the remaining balance of the lease. Jay Leitson stated that if Renaissance had notified them of the subsequent defaults, and indicated that

they were still liable, Jay-Lor would have re-entered the premises and resumed operation of the restaurant.

{¶ 14} Marlene Leitson testified that Jay-Lor had been a tenant of Renaissance for more than 35 years and had never missed a rent payment. Marlene Leitson also stated that Renaissance refused to assign the remaining balance of Jay-Lor's lease term to ZTY. Marlene Leitson further stated that Renaissance had never notified Jay-Lor of the subsequent defaults of ZTY and JRS. Finally, Marlene Leitson testified that Chisling knew how to get in touch with her, because Chisling hired her to cater a private party at his home after Jay-Lor sold the restaurant's assets and liquor license to ZTY.

{¶ 15} Chisling confirmed that he entered into two separate leases after Jay-Lor vacated the premises in October 2006, but insists that it was done to mitigate Renaissance's damages. Chisling also admitted that the terms of the subsequent leases differed from Renaissance's lease with Jay-Lor. In addition, Chisling admitted that he never notified Jay-Lor when ZTY and JRS defaulted on the terms of their respective leases.

{¶ 16} At the close of Renaissance's case, the trial court granted Jay-Lor's motion to dismiss pursuant to Civ.R. 41(B)(2). Renaissance requested findings of fact and conclusions of law. After considering the parties proposed findings, the trial court issued its findings of fact and conclusions of law. Renaissance now appeals.

## Motion to Dismiss

{¶ 17} In the first assigned error, Renaissance argues the trial court erred in granting Jay-Lor's motion to dismiss.

{¶ 18} Civ.R. 41(B)(2) provides, in pertinent part:

**"After the plaintiff, in an action tried by the court without a jury, has completed the presentation of the plaintiff's evidence, the defendant, \* \* \* may move for a dismissal on the grounds that upon the facts and the law, the plaintiff has shown no right to relief."**

{¶ 19} Civ.R. 41(B)(2) thus permits a defendant in a nonjury action to move for dismissal of the action after the close of the plaintiff's case. Dismissals under Civ.R. 41(B)(2) are similar in nature to directed verdicts in jury actions; however, because a dismissal under Civ.R. 41(B)(2) is used in nonjury actions, it requires the trial court and reviewing court to apply different tests. See *Peterman Plumbing & Heating, Inc. v. Pickerington Local School Dist., Bd. of Edn.*, 5th Dist No. 10 CA 9, 2010-Ohio-6587, citing *Central Motors Corp. v. Pepper Pike* (1979), 63 Ohio App.2d 34, 48, 409 N.E.2d 258. Civ.R. 41(B)(2) specifically provides the trial court may consider both the law and the facts.

{¶ 20} Therefore, under the rule, the trial judge, as the trier of fact, does not view the evidence in a light most favorable to the plaintiff, but instead actually determines whether the plaintiff has proven the necessary facts by

the appropriate evidentiary standard. Id., citing *L.W. Shoemaker, M.D., Inc. v. Connor* (1992), 81 Ohio App.3d 74, 610 N.E.2d 470.

{¶ 21} Even if the plaintiff has presented a prima facie case, dismissal may still occur if the trial court determines that the necessary quantum of proof makes it clear that the plaintiff will not prevail. *Webb v. C & J Properties, L.L.C.*, 12th Dist. No. CA2010-01-016, 2010-Ohio-3818. A trial court's ruling on a Civ.R. 41(B)(2) motion will be set aside on appeal "only if erroneous as a matter of law or against the manifest weight of the evidence." *Tillman v. Watson*, 2d Dist. No. 06-CA-10, 2007-Ohio-2429, ¶11-12, citing *Bank One, Dayton, N.A. v. Doughman* (1988), 59 Ohio App.3d 60, 63, 571 N.E.2d 442.

{¶ 22} Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *Dalesandro v. Ohio Dept. of Transp.*, 10th Dist. No. 10AP-241, 2010-Ohio-6177, citing *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 376 N.E.2d 578, syllabus. An appellate court neither weighs the evidence nor judges the credibility of the witnesses, but, instead, determines whether there is relevant, competent, and credible evidence upon which the fact finder could base its judgment. *Hoover v. James*, 5th Dist. No. 02-COA-045, 2003-Ohio-4373, ¶18.

**{¶ 23}** In the instant case, the trial court weighed the evidence and determined that Renaissance's actions, prior to and subsequent to Jay-Lor vacating the premises, demonstrated their intent to surrender the lease with Jay-Lor. For the reasons that follow, we agree with the trial court's determination.

**{¶ 24}** Initially, we note that the evidence indicates that Jay-Lor sought to assign the balance of their lease to ZTY, but Renaissance refused. An assignment is a transaction whereby the lessee transfers its entire interest in a premises for the unexpired term of the original lease to another party, an assignee. See, e.g., *N.R.I. Co. v. N.R. Dayton Mall, Inc.* (Nov. 1, 1991), 2d Dist. No. 12528. The assignment divests the lessee of any interest in the property and transfers it to the assignee. The lessee, however, is still in privity of contract with the original lessor, and the assignment thus does not relieve the lessee of its express obligation to pay rent. *Szwec v. Sheban* (1947), 50 Ohio Law Abs. 513, 80 N.E.2d 172. In essence, had Renaissance granted the requested assignment, Jay-Lor would have remained contractually obligated and would have been on notice that they would be liable for any unpaid rents if ZTY defaulted.

**{¶ 25}** Instead, Renaissance, after rejecting Jay-Lor's request to assign the remainder of their lease to ZTY, entered into a new five-year lease with ZTY. In addition, when ZTY defaulted on that lease, Renaissance entered

into another five-year lease with JRS, who also defaulted. Both subsequent leases absorbed the remaining term of the original lease between Renaissance and Jay-Lor.

{¶ 26} The general rule is that an agreement to make a new lease between the landlord and a lessee's assignee extinguishes the liability of the lessee/assignor. *Norris v. D.D. Fashions, Inc.* (Apr. 3, 1991), 9th Dist. No. 14843, citing *City Natl. Bank & Trust Co. v. Swain* (Mar. 21, 1939), 2d Dist. No. 2871. Here, despite Renaissance's refusal to allow Jay-Lor to assign the balance of the lease term to ZTY, under the circumstances, ZTY became Jay-Lor's de facto assignee.

{¶ 27} Given that Renaissance entered into a new lease with ZTY, Jay-Lor's obligation under the original lease with Renaissance was extinguished. A new lease agreement is a surrender of the old lease, the effect of which is to terminate the former landlord-tenant relationship and to put an end to the old lease. *Morse & Hamilton Ltd. Partnership v. Gourmet Bagel Co.* (Sept. 29, 2000), 10th Dist. No. 99AP-1253.

{¶ 28} Further, a surrender of a lease may also result from the lessor's entry into an agreement with the assignee containing materially different provisions from the old lease amounting to a new lease. Id., citing *Swain*, supra. The evidence adduced at the bench trial established that the lease between Renaissance and ZTY contained different terms from the original

lease with Jay-Lor. The evidence established that the new lease included three months of free rent.

{¶ 29} The evidence also established that in addition to entering into two subsequent leases, following Jay-Lor's departure, Renaissance failed to notify Jay-Lor when the lessees defaulted. Instead, when ZTY defaulted, Renaissance entered into a new lease with JRS, whose principal happen to have also been the principal of ZTY. When JRS subsequently defaulted, Renaissance filed suit against them and recovered a judgment of approximately $460,000.

{¶ 30} The evidence established that it was not until JRS proved uncollectible and judgment proof, by virtue of filing bankruptcy, that Renaissance decided to proceed against Jay-Lor. Chisling admitted at trial that he knew the whereabouts of Jay-Lor's principals, that he had hired Marlene Leitson to cater a private party at his home, and that he never indicated that the subsequent lessees had defaulted. Further, to allow Renaissance to also prevail against Jay-Lor would amount to double recovery, resulting in an impermissible economic windfall.

{¶ 31} On the record before us, we conclude that the trial court's decision was supported by relevant, competent, and credible evidence. Renaissance's actions, especially those subsequent to Jay-Lor vacating the premises, signaled their intentions to surrender the lease with Jay-Lor. As such, the

trial court properly granted Jay-Lor's motion to dismiss pursuant to Civ.R. 41(B)(2). Accordingly, we overrule the first assigned error.

{¶ 32} Our disposition of the first assigned error, renders the second assigned error moot. App.R. 12(A)(1)(C).

Judgment affirmed.

It is ordered that appellee recover from appellant its costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
PATRICIA ANN BLACKMON, PRESIDING JUDGE

MELODY J. STEWART, J., and
JAMES J. SWEENEY, J., CONCUR