[Cite as *Purely Visionary, L.L.C. v. Patrick*, 2026-Ohio-2164.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

Purely Visionary, LLC.

Court of Appeals No.  L-25-00263
L-25-00264

Appellee

Trial Court No.  CVG-25-04798
CVG-25-13008

v.

Barbara Patrick

**<u>DECISION AND JUDGMENT</u>**

Appellant

Decided: June 9, 2026

* * * * *

Milton E. Pommeranz, for appellee.

Barbara Patrick, pro se.

* * * * *

**SULEK, J.**

{¶ 1} In this consolidated forcible entry and detainer action, defendant-appellant, Barbara Patrick, pro se, appeals the October 21, 2025 judgment of the Toledo Municipal Court, Housing Division, finding her in breach of the residential lease agreement and

granting appellee Purely Visionary, LLC's request for a writ of restitution of the real property. For the reasons that follow, the judgment is affirmed.

**I. Facts and Procedural Background**

{¶ 2} Patrick first leased the subject property in January 2023, from its prior owner. Purely Visionary purchased the property in March 2023, and executed a new lease agreement with Patrick, effective March 15, 2023. Thereafter, on July 1, 2023, Patrick entered into a residential lease with option to purchase the property. Patrick was to pay $1,000 per month plus $100 for water and pay a non-refundable $5,000 deposit by December 31, 2023. Patrick failed to tender the deposit and the option expired. On March 26, 2025, Purely Visionary filed a complaint for forcible entry and detainer alleging that Patrick was in default of the lease agreement by failing to remit her March rent payment. Patrick filed an answer and counterclaim. Patrick alleged that she and the prior owner entered into a lease with an option to purchase the property, that she paid the $5,000 option fee, and that Purely Visionary was subject to and breached this agreement.

{¶ 3} Purely Visionary voluntarily dismissed its complaint, without prejudice. On July 30, 2025, under a new case number, Purely Visionary commenced a second forcible entry and detainer action alleging that Patrick failed to pay her rent for the months of February through July 2025. Purely Visionary claimed that under the terms of the lease agreement Patrick was to pay $750 per month in rent and $100 for water.

{¶ 4} The parties entered into a consent judgment entry where the court consolidated the actions under the original case number which had pending

2.

counterclaims, that Purely Visionary was not currently entitled to a writ of eviction, that Patrick would escrow $4,250 with the Clerk of Court,[1] and that going forward Patrick's monthly rent payments would be held in escrow.

{¶ 5} The matter proceeded to a bench trial with the parties presenting the following evidence. Patrick's landlord, Robin Freeman, testified that she is the sole owner of Purely Visionary, LLC, which purchased the property in March 2023, with Patrick residing at the property pursuant to a lease agreement with the former owner. Freeman was unaware of the specifics of the agreement until meeting with Patrick in early April. Patrick informed Freeman that she and the prior owner entered into an option to purchase the property; she later forwarded the prior lease-to-own agreement to Freeman.

{¶ 6} When Purely Visionary purchased the property, the prior owner gave Freeman the rental assistance monies paid by Toledo Housing on behalf of Patrick making her rent current through June.

{¶ 7} In early April, Purely Visionary and Patrick entered into a lease agreement identical to the one with the prior owner– $750 per month plus $100 for water. Patrick expressed a desire to execute a lease-to-own agreement so on July 1, 2023, the parties entered into an agreement setting the purchase price of $30,000, with a minimum three-year lease term, and rent at $1,000 per month with $300 going towards the purchase of

---

[1]The parties later agreed that the sum would be held in Patrick's attorney's IOLTA account.

3.

the property.  The agreement also required a $5,000 option fee which Freeman maintained was never paid.

{¶ 8} Freeman reviewed the payments received from Patrick and noted them on her payment ledger.  Patrick had a credit at 2023 year-end caused by Freeman charging more for late fees than statutorily allowed.  During 2024, Patrick made payments of varying amounts when she was able.  Freeman received Patrick's last rent payment in February 2025.  Patrick's lease payments were remitted through an app called MoneyLion.  Printouts of the payments were admitted into evidence.

{¶ 9} During cross-examination, Freeman denied receiving the $5,000 option fee Patrick claimed to have paid the prior owner; she received only the advance rent payments from Toledo Housing.  She could not dispute any claims regarding the condition of the home.

{¶ 10} Freeman admitted that she charged Patrick $1,100 in monthly rent under the lease-to-own contract that was never executed.  According to Freeman's payment ledger, Patrick had a credit in 2023 and 2024, but as of April 2025, owed $2,200.  Freeman denied receiving a $3,000 payment Patrick claimed to have made in February 2025.  There is no record of its receipt.

{¶ 11} Purely Visionary's ledger contained varying rent charges, payments, and late fees.  When questioned about how Patrick would be able to discern what she owed, Freeman stated that they had multiple conversations regarding rent remittals.  She agreed

4.

that their rental agreement became convoluted but that there were months when Patrick would not pay any rent, or made partial payments.

{¶ 12} At the conclusion of Freeman's testimony, Patrick's counsel moved for a directed verdict arguing that Purely Visionary failed to present any evidence as to what Patrick owed. Patrick claimed that she presented sufficient evidence that the parties entered into an option contract for the property, over 20 per cent of the total had been paid, and that eviction was not the proper remedy. The trial court denied the motion.

{¶ 13} Barbara Patrick testified that she signed the initial lease agreement with the prior owner on January 6, 2023, and they discussed her purchasing the property. The prior owner presented her with an option-to-purchase contract, valid until March 15, 2023, requiring a $5,000 option fee. Patrick claims that she signed and returned the agreement (her signature dated February 12) and made payments of $1,500, $1,200, and $400 on the option between January and February 2023.

{¶ 14} Patrick stated that under the lease agreement with the prior owner, she agreed to make various repairs to the property for rent credit. In addition, the prior owner agreed to replace the windows and front door but sold the property prior to making the improvements. Patrick claims that she spent $2,000 to replace the door.

{¶ 15} Patrick informed Freeman that she paid the $5,000 option fee to the prior owner; however, she executed a new lease with Purely Visionary and signed a new option to purchase the property.

5.

{¶ 16} Patrick disputed the accuracy of Freeman's payment ledger. She claimed that in October 2023, she made an additional payment of $1,110. She also claimed that on February 21, 2025, she made a $3,000 payment through MoneyLion which does not appear on Freeman's account statement. Patrick submitted a screenshot purportedly evidencing the sent payment.

{¶ 17} Patrick stated that she made several repairs to the home including paint, plaster, installing dryer vents, and adding a shower. The house currently has various water leaks, mold, foundation cracks, and roof issues.

{¶ 18} On October 21, 2025, the trial court granted Purely Visionary judgment on its eviction action and for past due rent of $4,250. The court awarded Patrick her $850 security deposit. This appeal followed.

## II. Assignments of Error

{¶ 19} Patrick raises five assignments of error for review:

Assignment of Error I: The trial court erred by disregarding material evidence and testimony, resulting in findings against the manifest weight of the evidence.

Assignment of Error II: The trial court erred by failing to address and resolve material credibility conflicts in testimony.

Assignment of Error III: The trial court erred by misapplying contract law and ignoring the existence of a valid prior purchase agreement.

Assignment of Error IV: The trial court erred by accepting misstatements regarding rent and payment obligations.

Assignment of Error V: The trial court erred by allowing Appellee to rely on claimed ignorance of Ohio law while benefitting from Ohio property transactions.

6.

### III. Analysis

### A. Manifest Weight of the Evidence

{¶ 20} Patrick's first, second, and fourth assignments of error relate to the trial court's review of and weight given to the exhibits and testimony presented at trial; we will jointly address them. The first assignment of error claims that the judgment was against the manifest weight of the evidence. In Patrick's second assignment of error, she maintains that the court failed to address and resolve witness credibility issues. Patrick's fourth assignment of error asserts that the court erred by accepting misstatements regarding the amount of rent owed.

{¶ 21} An appellate court reviews a judgment from a civil bench trial under the manifest weight of the evidence standard. *Iron Horse Bar and Grill, LLC v. GGJ Triune, PLL*, 2024-Ohio-284, ¶ 28 (6th Dist.), quoting *Bonner v. Delp*, 2021-Ohio-3772, ¶ 38 (6th Dist.). The manifest weight standard is the same in a civil case as in a criminal case. *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 17. Thus, "[t]he [reviewing] court weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." *Id.* at ¶ 20, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). "'Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence.'" *Iron Horse* at ¶ 28, quoting *C. E. Morris*

7.

*Co. v. Foley Constr. Co*., 54 Ohio St.2d 279, syllabus. When the trial court is the trier of fact, "[i]t is at liberty to believe or disbelieve a witness and accept or reject his testimony or any part thereof." *Toledo Edison Co. v. Czajka*, 2003-Ohio-3684, ¶ 6 (6th Dist.).

{¶ 22} Entering judgment in favor of Purely Visionary on its eviction claim, the trial court noted that the parties presented conflicting testimony and noncredible documentary evidence. The court ultimately concluded that the parties entered into a lease agreement that did not include an option to purchase and that because Patrick failed to pay rent for several months, she was in default.

{¶ 23} Contrary to Patrick's assertions, the trial court acts as "'the arbiter of witness credibility.'" *Williamson v. Tucker*, 2022-Ohio-1536, ¶ 10 (6th Dist.), quoting *Aslam v. Grand Aire Express*, 2002-Ohio-2641, ¶ 6 (6th Dist.). "We cannot reverse a decision simply because we hold a different opinion concerning the credibility of the witnesses and evidence submitted to the trial court." *Id.*

{¶ 24} Upon review of the trial transcript and exhibits, the trial court did not lose its way in finding that Patrick breached the lease agreement and that the option to purchase was never executed. There is no competent evidence that Patrick tendered the option fee; therefore, the option expired. Patrick's first, second, and fourth assignments of error are not well-taken.

### B. Validity of the Prior Lease and Option Contract

{¶ 25} Patrick's third assignment of error argues that the trial court erred by rejecting her claim that she executed an option contract with the prior owner and that

Purely Visionary breached that agreement. Patrick further claims that Purely Visionary should be held to the lease terms with the prior owner.

{¶ 26} The parties replaced the original lease agreement, however, when they entered into a new lease agreement in March 2023. Thus, the terms of the prior lease are neither relevant nor controlling. *Kilcoyne Properties, LLC v. Fischbach*, 2004-Ohio-7272, ¶ 30-31 (5th Dist.); *Renaissance Mgt., Inc. v. Jay-Lor Corp.*, 2011-Ohio-2792, ¶ 27 (8th Dist.). Accordingly, once Patrick executed a new lease with Purely Visionary, the new lease terms controlled.

{¶ 27} "An option contract is an agreement in which the owner of property grants another person the privilege, without the obligation, to purchase the property at a set price and within a set time." *Slak v. Strozier*, 2024-Ohio-286, ¶ 25 (6th Dist.), citing *Wolf v. Miller Diversified Consulting, LLC*, 2008-Ohio-1233, ¶ 22 (6th Dist.). "It consists of an offer to buy, sell, or perform (which becomes a contract if the offeree properly accepts it), combined with a binding agreement to leave the offer open for a specific period of time." *Id.*, citing *Shrock v. Spognardi*, 2015-Ohio-4555, ¶ 18 (5th Dist.), citing *Cent. Funding, Inc. v. CompuServe Interactive Servs., Inc.*, 2003-Ohio-5037, ¶ 38 (10th Dist.).

{¶ 28} The lease at issue provided for Patrick to pay a $5,000 option fee by March 15, 2023 and Patrick claims she accepted the offer in February 2023, prior to Purely Visionary's purchase date. She claims that she tendered three payments for the option sum between January and February 2023. These amounts are reflected on Patrick's exhibit No. 3 which shows payments of $1,500 on January 6, with the notation "226 e

9.

Oakland owe back 850," $1,200 on February 4, and $400 on February 6. Patrick's exhibit No. 4 shows two payments Toledo Housing made on February 23 to the former landlord: $850 for rent arrears, and $2,550 in rent assistance. This is consistent with Freeman's testimony that Patrick had a rent credit through June 2023 ($850 x 3 or $2550) when she purchased the property.

{¶ 29} Further, Freeman testified that she had no knowledge of the alleged option contract, signed only by Patrick, not her prior landlord, when Purely Visionary purchased the property. After Patrick informed her, she offered to execute a new option contract and Patrick agreed. As previously stated, Patrick allowed the new option to expire. Based on the foregoing, the trial court did not err in rejecting Patrick's claim regarding the validity of the original lease and option contracts. The third assignment of error is not well-taken.

## C. Ignorance of the Law

{¶ 30} Patrick claims in her fifth and final assignment of error that the trial court erred by allowing Freeman to benefit from the same Ohio laws of which she claimed ignorance. While her brief is unclear, it appears that Patrick is claiming that Freeman's ability to complete an Ohio real estate transaction and maintain an eviction action evidences that she is not exempt from her contractual and statutory obligations under Ohio law.

{¶ 31} Freeman, as sole owner of Purely Visionary, executed a new lease with Patrick and neither the original nor subsequent option contract was properly executed.

10.

Thus, Purely Visionary did not breach any contractual or statutory obligation. Patrick's fifth assignment of error is not well-taken.

## IV. Conclusion

{¶ 32} Upon due consideration, the judgment of the Toledo Municipal Court, Housing Division, is affirmed. Pursuant to App.R. 24, Patrick is ordered to pay the costs of this appeal.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, P.J.

JUDGE

Gene A. Zmuda, J.

JUDGE

Charles E. Sulek, J.
CONCUR.

JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.